Daisy L. STANLEY–SNOW, Debtor.

David G. Backlund and Sharon Backlund, Plaintiffs–Appellees,

v.

Daisy L. Stanley–Snow, Defendant–Appellant.

BAP No. MB 08–065.
Bankruptcy No. 06–11319–WCH.
Adversary No. 06–01329–WCH.

United States Bankruptcy Appellate Panel of the First Circuit.

May 6, 2009.

14

Michael B. Feinman, Esq., and Stephen P. Shannon, Esq., Andover, MA, on brief for Defendant–Appellant.

Honoria DaSilva–Kilgore, Esq., Taunton, MA, on brief for Plaintiffs–Appellees.

Before VOTOLATO, VAUGHN, and CARLO, United States Bankruptcy Appellate Panel Judges.

PER CURIAM.

Daisy L. Stanley–Snow (the "Debtor") appeals from the bankruptcy court's order granting summary judgment in favor of David Backlund and Sharon Backlund (the "Plaintiffs") on their claim that a state court judgment in favor of the Plaintiffs was nondischargeable pursuant to § 523(a)(2)(A).[1] The Debtor argues that

---

1. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy

the bankruptcy court erred in giving a prior state court judgment collateral estoppel effect, because: (1) a default judgment does not have collateral estoppel effect in a subsequent action; and (2) the standard for establishing a Chapter 93A violation under Massachusetts' law, which was the basis of the state court judgment, differs from the standard for a claim of nondischargeability under § 523(a)(2)(A). For the reasons discussed below, we **AFFIRM.**

### Background

Prior to this bankruptcy case, the Plaintiffs and the Debtor were neighbors. The Debtor lived with her husband, Kevin Snow, her son, Kevin Snow, Jr., and her sister, Martha Stanley. The Debtor owned the driveway paving business known as Main Street Paving, which was operated by her husband. During 2001 and 2002, the Plaintiffs made substantial payments to the Debtor, either directly or through Main Street Paving, or to other family members. The Plaintiffs, who are mentally challenged, assert that they were scammed into making payments for a variety of reasons, including unnecessary driveway paving and landscaping services, the building of a post–9/11 bomb shelter, and several bogus demands for ransom, to obtain the release of the Debtor and her husband from falsely contrived kidnapping situations. The Debtor claimed that the payments were either gifts or payments for services actually rendered.

In 2003, the Plaintiffs brought suit in Essex County Superior Court (the "state court") against the Debtor, her husband, and her sister (the "Defendants"), alleging unjust enrichment, fraud/misrepresentation, conversion, conspiracy, and violation of the Consumer Protection Act, Mass. Gen. Laws ch. 93A ("Chapter 93A"). The

Debtor filed an answer to the complaint, the parties conducted extensive discovery, and the matter was set for a trial. When the defendants failed to appear on the first day of trial (although they were subpoenaed by the Plaintiffs, and despite their counsel's repeated attempts to contact them), the state court defaulted each of the Defendants on all five counts of the complaint. The case then proceeded before a jury for the assessment of damages on the first four counts, with the state court reserving decision on the fifth count, which alleged Chapter 93A violations. Only the Debtor appeared and testified at the damages trial. The jury returned a verdict in favor of the Plaintiffs in the amount of $58,275.00. As to the fifth count, the state court trial judge concluded that the Defendants had violated Chapter 93A, and that treble damages, attorneys' fees and costs were warranted. Accordingly, judgment was entered against each of the Defendants in the amount of $474,703.46, which included damages, interest, costs, attorneys' fees and punitive damages (the "State Court Judgment"). The state court also issued an order of execution against each of the Defendants.

In its Findings and Rulings regarding the Chapter 93A count, the state court made the following specific findings:

1. "Main Street Paving" was merely a "d/b/a" for the Debtor.

2. The three individual defendants (including the Debtor), "were engaged in willful and knowing common scheme of unfair and deceptive practices designed to steal as much money as they could from the mentally challenged plaintiffs and put it in their own pockets."

Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8,

119 Stat. 23, 11 U.S.C. § 101, *et seq.*

3. "Defendant Kevin Snow and Martha Stanley were overt actors and perpetrators of fraudulent schemes to separate the plaintiffs from their money." Kevin Snow "unduly influenced and eventually frightened" the plaintiffs into giving him money for the building of a "bomb shelter" for their safety after the events of September 11, 2001, and ultimately built a "worthless structure." In addition, "Kevin Snow pressured the plaintiffs into having their asphalt driveway resurfaced at an outrageous cost when such work was not required." Kevin Snow and Martha Stanley also participated in a scheme to extract monies from the plaintiffs for ransom to free the Debtor and her husband from "phony kidnapping situations."

4. "Defendants Kevin Snow and [the Debtor] either enlisted or encouraged their son to participate in scamming the plaintiffs by having him convince the plaintiffs that they needed a further resurfacing of their driveway at additional cost."

5. The Debtor "obtained the d/b/a/ Main Street Paving to allow [her husband] to perform paving projects under that name" and her d/b/a "assisted [her husband] in his efforts to defraud the plaintiffs concerning the bomb shelter and paving work."

6. "[The Debtor] bears responsibility to the [plaintiffs] for allowing Kevin Snow to operate under the d/b/a name when she knew that Kevin Snow was extracting unexplained large sums of money from the [plaintiffs] at a time when Kevin Snow was feeding a drug habit."

7. The Debtor's testimony on the second day of trial, that she knew nothing of her husband's and sister's schemes "was not credible," that "she cashed substantial checks written by the plaintiffs to her ..." and that "she knew what was going on and was perfectly accepting of it and was a willing participant and beneficiary of the plan to separate [the plaintiffs] from their money."

8. The defendants' conduct "was unscrupulous, unconscionable and violates all sense of decency and acceptable community standards."

Shortly thereafter, the Debtor filed a chapter 7 petition. The bankruptcy judge granted the Debtor's motion to avoid the Plaintiffs' judicial lien, thereby converting the Plaintiffs' secured claim into a general unsecured claim.

The Plaintiffs filed an adversary proceeding against the Debtor seeking: (1) a determination that the debt owed to the Plaintiffs as a result of the State Court Judgment is non-dischargeable under § 523(a)(2)(A); (2) an order denying the Debtor a discharge pursuant to § 727(a)(4)(A); (3) a judgment against the Debtor in the amount of $474,703.46, plus legal fees and costs; and (4) an order allowing the Plaintiffs to attach the Debtor's real estate for any judgment issued by the bankruptcy court. The Debtor filed an answer to the complaint, discovery ensued, and the Plaintiffs filed a motion for summary judgment on the first four counts of their complaint, which the Debtor opposed.

After a hearing, the bankruptcy judge in a bench ruling, made his findings and conclusions on the record, holding that: (1) the Debtor was collaterally estopped from challenging the State Court Judgment and findings of the state court; and (2) the damages awarded by the state court were nondischargeable under § 523(a)(2). The bankruptcy judge then issued an order granting summary judgment in favor of the Plaintiffs on the first four counts of the

complaint. The bankruptcy court order stated: "Hearing held. Judgment as to liability and dischargeability only: money judgment not granted."

Although the Debtor filed a timely notice of appeal, the Panel dismissed the appeal as interlocutory, as the judgment did not resolve the issues set forth in Count V, regarding whether the Debtor should be denied a discharge pursuant to § 727(a)(4)(A). The Plaintiffs eventually withdrew the remaining count, and the bankruptcy court granted the Plaintiffs' request for entry of a final judgment. This appeal followed.

### Jurisdiction

 The Panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). The Panel is duty-bound to determine its jurisdiction before proceeding to the merits, even if not raised by the litigants. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724, 725–26 (1st Cir. BAP 1998). Although the bankruptcy court's order granting partial summary judgment in favor of the Plaintiffs was interlocutory when entered, since it did not resolve the issues set forth in Count V of the complaint, it became reviewable once the Plaintiffs withdrew Count V (§ 727) and the bankruptcy court granted their request for entry of a final judgment. *See Tringali v. Hathaway Machinery Co., Inc.*, 796 F.2d 553, 559 (1st Cir.1986) (noting that entry of a final, appealable order

enables appellant to request review of earlier nonfinal decisions upon which the final decision rests).

### Standard of Review

 The Panel generally reviews findings of fact for clear error and conclusions of law *de novo*. *See TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719 n. 8 (1st Cir.1994). We review the bankruptcy court's order granting summary judgment *de novo*. *See Segarra Miranda v. Garrido Pagan (In re Garrido Jimenez)*, 370 B.R. 878, 880 (1st Cir. BAP 2007) (citing *Guzman–Rosario v. United Parcel Serv., Inc.*, 397 F.3d 6, 9 (1st Cir.2005); *Canzano v. Ragosa (In re Colarusso)*, 382 F.3d 51, 57–58 (1st Cir. 2004)).

### Discussion

## I. The Summary Judgment Standard

A motion for summary judgment in an adversary proceeding under § 523(a)(2)(A) to have a debt declared nondischargeable is governed by the same standards applicable to motions under Fed.R.Civ.P. 56. *See* Fed. R. Bankr.P. 7056. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The moving party bears the initial burden of demonstrating that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Razzaboni v. Schifano (In re Schifano)*, 378 F.3d 60, 66 (1st Cir.2004) (citing *Celotex Corp. v. Catrett*, 477 U.S.

317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the initial burden is met, the burden shifts to the non-moving party to show that genuine issues of material fact exist. *Id.* (citing *F.D.I.C. v. Ponce,* 904 F.2d 740, 742 (1st Cir.1990)). The non-moving party must set forth more than conclusory allegations, improbable inferences or unsupported speculation, to establish genuine issues of material fact. Competent evidence is required. *Id.* (citing *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)). Although the court must view the record in the light most favorable to the nonmoving party, "as to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *McCrory v. Spigel (In re Spigel),* 260 F.3d 27, 31 (1st Cir.2001) (citations omitted).

## II. Collateral Estoppel

The Debtor argues that the bankruptcy court erred in concluding that she was collaterally estopped from challenging the State Court Judgment and findings of the state court.

 The doctrine of collateral estoppel applies in bankruptcy dischargeability proceedings. *See Grogan v. Garner,* 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In determining whether a party should be estopped from relitigating an issue decided in a prior state court action, the bankruptcy court must look to that state's law of collateral estoppel. *See Spigel,* 260 F.3d at 33 (citing *New Hampshire Motor Transp. Ass'n v. Town of Plaistow,* 67 F.3d 326, 328 (1st Cir.1995)); *see also Marrese v. American Academy of Orthopaedic Surgeons,* 470

U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (stating that the full faith and credit statute, 28 U.S.C. § 1738, "directs a federal court to refer to the preclusion law of the State in which the judgment was rendered."). Under Massachusetts law, collateral estoppel precludes relitigation of issues in prior actions between the parties or those in privity with those parties, provided the issues were actually litigated in the first action, and determined by a "final judgment on the merits." *Smith Barney, Inc. v. Strangie (In re Strangie),* 192 F.3d 192, 194 (1st Cir.1999). To apply the doctrine, a court must determine that: (1) there was a valid and final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior litigation; (3) the issue in the prior adjudication is identical to the issue in the current litigation; and (4) the issue in the prior litigation was essential to the earlier judgment. *Alba v. Raytheon Co.,* 441 Mass. 836, 809 N.E.2d 516, 521 (2004) (citations omitted). The Supreme Judicial Court of Massachusetts has noted that "the 'guiding principle' in determining whether to allow a party to use collateral estoppel is whether the party against whom it is asserted had a 'full and fair opportunity to litigate the issue in the first action or [whether] other circumstances justify affording him an opportunity to relitigate the issue.'" *Treglia v. MacDonald,* 430 Mass. 237, 717 N.E.2d 249, 253 (1999) (quoting *Martin v. Ring,* 401 Mass. 59, 514 N.E.2d 663 (1987)).

The Debtor argues that the first and third elements of collateral estoppel were not met. First, she alleges that there was not a final judgment *on the merits* in the state court action because the State Court Judgment was entered by default, and, therefore, she did not have a full and fair

opportunity to litigate the issue of fraud.[2] Second, she argues that the issues in the two proceedings were not identical because the standard for determining the Chapter 93A claim in the state court differs from the standard for determining nondischargeability under § 523(a)(2)(A).

### A. Final judgment on the merits-actually litigated in state court

It is within a court's discretion to apply collateral estoppel to a default judgment. *See Int'l Strategies Group, Ltd. v. Pomeroy (In re Pomeroy)*, 353 B.R. 371, 376 (Bankr.D.Mass.2006). In Massachusetts, however, default judgments are generally not given collateral estoppel effect on an issue in a subsequent action because the issues have not been actually litigated. *See Treglia*, 717 N.E.2d at 253;[3] *see also Staniunas v. Delisle (In re Delisle)*, 281 B.R. 457, 463 (Bankr.D.Mass. 2002); *Phalon v. Varrasso (In re Varrasso)*, 194 B.R. 537, 539 (Bankr.D.Mass. 1996); Restatement (Second) of Judgments § 27 cmt. e (1982) (in the case of a judgment entered by default, none of the issues is actually litigated, therefore, the judgment should not have preclusive effect). Nonetheless, the Supreme Judicial Court of Massachusetts has recognized that there are situations where, following a default judgment, an issue may be given preclusive effect in subsequent litigation between the same parties:

> We can, for example, envision circumstances in which a litigant may so utilize our court system in pretrial procedures, but nonetheless be defaulted for some reason, that the principle and rationale behind collateral estoppel would apply. *See, e.g., Matter of Gober*, 100 F.3d 1195 (5th Cir.1996) (holding that default judgment based on failure to answer does not support issue preclusion but where default issued as discovery sanction against defendant debtor after two years of litigation in which defendant had answered and denied all allegations of complaint, collateral estoppel applied); *In re Bush*, 62 F.3d 1319, 1324 (11th Cir.1995) (applying collateral estoppel effect to prior default judgment against debtor based on fraud, where debtor "actively participated" in adversary process for almost one year through filing answer, counterclaim, and discovery requests).

*Treglia*, 717 N.E.2d at 254.

In addition, most federal courts of appeal have recognized an exception to the general rule that collateral estoppel does not apply to a default judgment.[4] These

---

**2.** Although the Debtor frames her issues in a slightly different fashion, her argument essentially boils down to a claim that these two elements of collateral estoppel were not met.

**3.** In *Treglia,* the United States Bankruptcy Appellate Panel for the First Circuit had certified the following question to the Supreme Judicial Court of Massachusetts:

> When a defendant appears in a civil action, files a motion seeking interlocutory relief, obtains that relief, but does not thereafter answer or defend; and when, after a damage hearing (in which the defendant does not participate), default judgment enters; does Massachusetts law preclude the defendant's litigation of the substantive elements underlying the default judgment in a subse-

quent action initiated by the same plaintiffs?

717 N.E.2d at 250. Although the *Treglia* court ultimately decided that the default judgment should not have preclusive effect under the specific facts before it, it noted that there might be exceptions to the general proposition. *See id.* at 249–50.

**4.** *See, e.g., Cornwell v. Loesch (In re Cornwell),* 109 Fed.Appx. 682 (5th Cir.2004); *Evans v. Ottimo,* 469 F.3d 278, 282 (2d Cir.2006); *Herbstein v. Bruetman,* 32 Fed.Appx. 158 (7th Cir.2002), *aff'd,* 266 B.R. 676 (N.D.Ill.2001); *Wolstein v. Docteroff (In re Docteroff),* 133 F.3d 210, 215 (3d Cir.1997); *Bush v. Balfour Beatty Bahamas, Ltd.,* 62 F.3d 1319, 1324 (11th Cir.1995); *Rally Hill Productions, Inc.*

courts have ruled that the "actual litigation" requirement of collateral estoppel may be satisfied if the party actively or substantially participated in the proceedings prior to the entry of a default judgment. *See Pomeroy,* 353 B.R. at 376–77; *see also Birdsall v. Tulloch (In re Tulloch),* 373 B.R. 370, 386 (Bankr.D.N.J. 2007) (concluding that due to defendant's substantial participation in the case, the Supreme Judicial Court of Massachusetts would deem those issues decided by the state court to have been "actually litigated" for issue preclusion purposes). These courts have reasoned that if a party was afforded a reasonable opportunity to defend in the prior action but chose not to do so, the party could have reasonably foreseen the consequences of not defending the action and it would be "undeserved" to give a "second bite at the apple when he knowingly chose not to defend himself in the first instance." *Bush,* 62 F.3d at 1324 (citing *Jones v. Wilson (In re Wilson),* 72 B.R. 956, 959 (Bankr.M.D.Fla.1987)). Although a few courts have declined to adopt a "substantial participation" exception, these courts are in the minority.[5]

 We conclude that the present case involves the type of circumstances contemplated by the Supreme Judicial Court of Massachusetts in *Treglia.* This is not a typical default case, i.e., one in which no answer was filed and the defendant's participation was on the periphery of the case. Rather, the Debtor participated extensively in the prior state court litigation for two years. She filed an answer to the complaint, participated in written discovery, gave a deposition and filed papers with the court. She participated up until the trial, at which time her counsel appeared, but she did not. She was subpoenaed to appear and her counsel made repeated attempts to contact her. No explanation was offered as to why the Debtor did not appear at the trial on the merits.

The Debtor ultimately appeared and testified at the damages portion of the trial. In fact, the Debtor's participation in the proceedings was significant enough that at the conclusion of the trial, the state court made detailed and specific findings of fact regarding her conduct and her credibility. For example, the state court found:

Although [the Debtor], who did decide to appear at the second day of trial, testified that she knew nothing of her husband's and sister's schemes, her testimony is not credible. She had meals with her husband, sister and son on a frequent and regular basis. She cashed substantial checks written by the plaintiffs to her, her husband (Kevin Snow) and her son and yet disclaims no [sic] knowledge of the nature of the work for which the checks were written. Knowing the plaintiffs' limitations, [the Debtor] had to think that there was something inappropriate about the activities of her husband and son which generated the plaintiffs issuing such large checks. The court concludes that she knew what was going on and was perfectly accept-

---

*v. Bursack (In re Bursack),* 65 F.3d 51 (6th Cir.1995); *F.D.I.C. v. Daily (In re Daily),* 47 F.3d 365, 367 (9th Cir.1995); *McCart v. Jordana (In re Jordana),* 232 B.R. 469, 472 (10th Cir. BAP 1999), *aff'd,* 216 F.3d 1087 (10th Cir.2000). Although most of these cases applied collateral estoppel principles in nondischargeability proceedings following *federal* default judgment cases, they support the application of a "substantial participation" anal-ysis when determining the preclusive effect of a state court default judgment.

**5.** *See, e.g., Federal Ins. Co. v. Gilson (In re Gilson),* 250 B.R. 226, 233–35 (Bankr.E.D.Va. 2000) (rejecting the "substantial participation" approach after concluding that such standard was too arbitrary); *see also Sly v. U.S. (In re Sly),* 280 B.R. 261 (Bankr.N.D.Fla. 2002).

ing of it and was a willing participant and beneficiary of the plan to separate [the Plaintiffs] from their money.

Because, in the opinion of the Panel, the "substantial participation" principle is applicable to the present case, that exception has been triggered, and we therefore conclude that the "already litigated" element of the collateral estoppel doctrine has been satisfied.

### B. Same Issues Litigated

The Debtor also argues that the third element of collateral estoppel—whether the issues in the two proceedings are identical—was not met. Specifically, she asserts that the essential elements of a § 523(a)(2)(A) nondischargeability claim were not established in the state court action.

■■■■ Pursuant to § 523(a)(2)(A), a monetary debt is nondischargeable to the extent the debt is obtained by "false pretenses, a false representation, or actual fraud." We note that many courts treat the phrases as "functionally equivalent." *See Bombardier Capital, Inc. v. Baietti (In re Baietti)*, 189 B.R. 549, 553–54 (Bankr.D.Me.1995). Yet,

> [a]ctual fraud by definition, consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception.

5 Collier on Bankruptcy Art. 532.08[1][e]. Whereas, to establish that a debt is nondischargeable under this section based on false pretenses or false representations, a creditor must show that: (1) the debtor

made a knowingly false representation or one made in reckless disregard of the truth; (2) the debtor intended to deceive; (3) the debtor intended to induce the creditor to rely upon the false statement; (4) the creditor actually relied upon the misrepresentation; (5) the creditor's reliance was justifiable; and (6) the reliance upon the false statement caused damage. *Spigel*, 260 F.3d at 32 (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997)). "The first two elements of the *Palmacci* test describe the conduct and scienter required to show the debtor's fraudulent conduct generally ... [while] ... [t]he last four elements embody the requirement that the creditor's claim must arise as a direct result of the debtor's fraud." *Aoki v. Atto Corp. (In re Aoki)*, 323 B.R. 803, 814 (1st Cir. BAP 2005) (citing *Spigel*, 260 F.3d at 32). The party seeking to except the debt from discharge bears the burden of proving each element by a preponderance of the evidence. *Spigel*, 260 F.3d at 32.

The parties disagree over whether the State Court Judgment established false representation or fraud by the Debtor. The Debtor argues that the State Court Judgment cannot have preclusive effect in this proceeding, as the essential elements of an exception to discharge under § 523(a)(2)(A)—namely, false representations, false pretenses, or actual fraud—were not litigated in or determined by the state court. The Plaintiffs argue that the state court's specific findings and conclusions on the Chapter 93A count are determinative of the Debtor's fraudulent conduct for purposes of § 523(a)(2)(A).[6]

---

**6.** Section 2 of Chapter 93A provides in relevant part: "(A) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws ch. 93A, § 2(a). Section 9 allows a court to double or treble the actual damages suffered as a result of a violation of section two where the offending conduct was willful or knowing. Mass. Gen. Laws ch. 93A, § 9.

The U.S. Court of Appeals for the First Circuit has noted that "Chapter 93A violations and fraud are not synonymous, and that Chapter 93A liability may be premised on conduct other than fraud." *Stoehr v. Mohamed*, 244 F.3d 206, 209 (1st Cir.2001). Therefore, the principle of collateral estoppel does not automatically operate to render a Chapter 93A judgment nondischargeable, because it would be possible under the same set of facts to find a violation of Chapter 93A for misconduct which lacks the elements of nondischargeability. *See Harb v. Toscano (In re Toscano)*, 23 B.R. 736 (Bankr.D.Mass.1982); *see also Commonwealth v. Hale*, 618 F.2d 143 (1st Cir.1980) (default judgment based upon debtor's Chapter 93A violations did not provide basis for application of the doctrine of collateral estoppel to determine nondischargeability in bankruptcy where state court record lacked any express findings on those issues relevant to nondischargeability). Neither misrepresentation nor fraud are a necessary component of a state court's judgment for Chapter 93A violations. Moreover, in a Chapter 93A action, it is unnecessary for a plaintiff to establish that the defendant knew his allegedly deceptive representations were false or to prove actual reliance upon the defendant's representations. *See Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 322 N.E.2d 768 (1975); *see also Rivers Edge Condo. Homeowners Ass'n v. Cohen (In re Cohen)*, 370 B.R. 26 (Bankr.D.N.H.2007).

Notwithstanding, this does not mean that a Chapter 93A judgment may not be given preclusive effect in a § 523(a)(2)(A) nondischargeability proceeding. To the contrary, collateral estoppel is appropriate where, as here, the record so amply supports the state court's conclusions in the State Court Judgment based on the Debtor's fraudulent conduct. *See Stoehr*, 244 F.3d at 208. As the *Stoehr*

court noted: "An issue may be actually decided for purposes of collateral estoppel, even if it is not explicitly decided, if it 'constituted, logically or practically, a necessary component of the decision reached in the prior litigation.'" *Id.* (quoting *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30–31 (1st Cir.1994)). Moreover, in determining whether an issue was actually litigated and decided, a federal court is "free to go beyond the judgment ... and examine the pleadings and evidence in the prior action." *Nissan v. Weiss (In re Weiss)*, 235 B.R. 349 (Bankr.S.D.N.Y.1999) (stating that the judge "may look beyond the [judgment] and examine the parties' pleadings as well as the evidence in the [prior action] to determine whether the [identical issue] was actually litigated"), *aff'd*, 255 B.R. 115 (S.D.N.Y.2000).

In assessing damages against the Debtor under Chapter 93A, the state court made specific findings of fact regarding the Debtor's conduct, i.e., all three Defendants "were engaged in willful and knowing scheme of unfair and deceptive practices designed to steal as much money as they could" from the Plaintiffs, and that the Debtor bore responsibility to the Plaintiffs for allowing her husband to operate under the d/b/a name when she knew that her husband was fraudulently extracting large sums of money from the Plaintiffs. The state court also found that the Debtor (and her husband) either enlisted or encouraged their son to participate in scamming the Plaintiffs by having him convince the Plaintiffs that they needed an unnecessary resurfacing of their driveway. The state court found that the Debtor's testimony, to the effect that she knew nothing of the schemes was not credible, that she cashed substantial checks made out to her, her husband and her son and that "she knew what was going on and was perfectly accepting of it and was a willing partici-

pant and beneficiary of the plan to separate [the plaintiffs] from their money." Here, the specific findings by the state court easily support the conclusion that the State Court Judgment was based on the Debtor's fraudulent conduct. *See Nickerson v. Matco Tools Corp.,* 813 F.2d 529, 531 (1st Cir.1987) (recognizing close relationship between common-law fraud and unfair or deceptive practices under Chapter 93A).

Moreover, numerous false representations were made as to: the necessity of repaving the Plaintiff's driveway; convincing the Plaintiffs to purchase a bomb shelter; and paying ransom for alleged kidnappings that never happened. The state court's specific findings easily establish that the Debtor was a knowing and active participant in these blatant schemes.

The state court record also supports the conclusion that the Plaintiffs justifiably relied upon the Defendants' misrepresentations and were damaged as a result. "The burden on the creditor [to show justifiable reliance] is relatively low ... [and] ... the creditor need not prove that he acted consistent with ordinary prudence and care." *Aoki,* 323 B.R. at 816 (citing *Sanford Inst. for Sav. v. Gallo,* 156 F.3d 71, 75 (1st Cir.1998)). "Although the plaintiff's reliance on the misrepresentation must be justifiable ... this does not mean that his conduct must conform to the standard of a reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Field v. Mans,* 516 U.S. 59, 70–71, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). Here, although more sophisticated plaintiffs might not have relied upon the statements made by the Defendants, these particular Plaintiffs trusted their neighbors and in the circumstances their reliance was clearly justifiable. Finally, the damages sustained by the Plaintiffs as a result of the Defendants' fraudulent and intentional conduct are well supported.

For the foregoing reasons, although a judgment for a Chapter 93A violation does not *per se* establish that the judgment should be deemed nondischargeable under § 523(a)(2)(6), we conclude that the detailed and carefully worded decision by the state court judge, who found and concluded that the Debtor was an active participant in a scheme to obtain funds from the Plaintiffs, was based on false pretenses and false representations. We also conclude that the state court's findings and conclusions were sufficient to support the bankruptcy court's ruling of nondischargeability under § 523(a)(2)(A).

### Conclusion

The Debtor substantially participated in the prior state court action, thus satisfying the "actually litigated" requirement for the application of collateral estoppel. Moreover, the state court made numerous factual findings of fraudulent conduct and false representations, which satisfied the elements of a nondischargeability claim under § 523(a)(2)(A). Thus, the Debtor was collaterally estopped from relitigating those issues in the bankruptcy court. We conclude that there were no genuine issues of material fact and that the Plaintiffs were entitled to judgment as a matter of law.

Accordingly, the bankruptcy judge's order granting summary judgment for the Plaintiffs on their dischargeability complaint, is **AFFIRMED.**