**FILED**

**FEB 12 2021**

**SUSAN M. SPRAUL, CLERK**
**U.S. BKCY. APP. PANEL**
**OF THE NINTH CIRCUIT**

ORDERED PUBLISHED

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>LANCE B. HAYNIE,<br>　　　　　Debtor. | BAP No. ID-20-1182-FLB<br><br>Bk. No. 2:17-bk-20587 |
| LANCE B. HAYNIE,<br>　　　　　Appellant,<br>v.<br>JACK KRYSTAL,<br>　　　　　Appellee. | Adv. No. 2:17-ap-07010<br><br>**OPINION** |

Appeal from the United States Bankruptcy Court
for the District of Idaho
Terry L. Myers, Bankruptcy Judge, Presiding

APPEARANCES:
Safa Michael Riadh of Valiant Law argued for appellant;
Michael G. Schmidt of Lukins & Annis, P.S. argued for appellee.

Before: FARIS, LAFFERTY, and BRAND, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

## INTRODUCTION

The question presented is whether the bankruptcy court correctly

gave issue preclusive effect to a state court judgment, even though the same state court had previously entered an inconsistent judgment between the same parties in the same lawsuit. There is no Washington authority on this question. We predict that the Washington Supreme Court would follow the general rule that the judgment last in time should be afforded issue preclusive effect notwithstanding the prior inconsistent judgment. We also hold that the bankruptcy court did not err in applying issue preclusion and holding that the judgment debt was nondischargeable under §§ 523(a)(2) and (a)(6).[1] Accordingly, we AFFIRM.

We publish to address this unanswered question of Washington law.

## FACTS[2]

### A.    Prepetition events

Appellant Lance B. Haynie worked for an internet company, Tsunami Communications, Inc., that owned Sanswire of Spokane, Inc. ("Sanswire"). Sanswire was struggling financially. In or around May 2003, Mr. Haynie and appellee Jack Krystal discussed the possibility of forming a new company to purchase Sanswire. They memorialized their plans and ideas for the new company in a handwritten memorandum that they

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] We exercise our discretion to review the bankruptcy court's docket, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008). Because this appeal presents a question of law and the basic facts and procedural history are not in dispute, we rely largely on the bankruptcy court's recitation of the facts in its memorandum decision.

referred to as the "Deal Points." Among other things, the Deal Points provided that Mr. Krystal would lend the new company up to $100,000 and would hold a thirty-percent interest in the new company. Mr. Haynie's existing company, LBH Communications, would form the new company, and he would have a seventy-percent interest, forty percent of which could be sold to future investors. Mr. Krystal was to be the CEO and Mr. Haynie would be the president. The Deal Points also specified a formula for monthly disbursements to Mr. Haynie and Mr. Krystal. The parties initially did not sign the Deal Points.

A month later, Mr. Haynie, apparently without Mr. Krystal's knowledge, formed Stat Network Solutions, LLC ("Stat"). Stat's corporate documents identified Mr. Haynie as the sole member and omitted Mr. Krystal. Around the same time, Mr. Haynie and LBH Communications executed a promissory note for a $20,000 loan from Mr. Krystal's company, Diversified Realty Services ("Diversified").

In August 2003, Stat purchased Sanswire from Tsunami Communications for $100,000. The owners of Tsunami Communications each received a five-percent membership interest in Stat. Mr. Haynie and LBH Communications executed another promissory note for a $100,000 loan from Diversified.

In October 2003, Mr. Haynie and Mr. Krystal discussed another loan of $25,000 to purchase equipment for Stat. By this time, Mr. Krystal had apparently learned of Stat's existence. Mr. Krystal requested, as an

"owner" of Stat, information regarding Stat's finances and operations, including revenues and expenses, accounts receivable and payable, and future work plans. Mr. Haynie agreed to discuss the matter with his attorney and to send the financial information. Mr. Haynie and LBH Communications executed the promissory note for the third loan, but Mr. Haynie never sent the requested financial information to Mr. Krystal.

In November 2003, the members of Stat considered admitting Mr. Krystal as a member with thirty-percent ownership, backdated to sometime after the Sanswire purchase. Mr. Krystal balked at the effective date: he insisted that the company documents be amended to reflect that he was involved with Stat from the beginning and had reached agreements with Mr. Haynie as reflected in the Deal Points.

In December 2003, Mr. Krystal and Mr. Haynie signed the original Deal Points, as well as a typed version with certain material changes. The typed Deal Points identified Mr. Krystal as "Chairman" and Mr. Haynie as "CEO/President."

In July 2004, Mr. Haynie sold fifty percent of Stat to Tom Davis for $650,000. Mr. Haynie used part of that sum to repay part of the Diversified loans but did not share any of the sale proceeds with Mr. Krystal.

In 2007, Mr. Krystal sued Mr. Haynie, Mr. Davis, and Stat in Washington state court. Among other things, he asserted breach of contract and conversion and sought a declaratory judgment that he was a thirty-percent member of Stat. Mr. Haynie answered the complaint and filed a

counterclaim.

The record on appeal includes only a few documents from the state court record, so what transpired there is somewhat murky. The parties agreed that the state court should hold a separate bench trial to decide the existence and percentage of Mr. Krystal's ownership interest in Stat. Mr. Haynie testified as a witness at trial but, according to the state court, "affirmatively waived his right to participate [as] a party." The state court issued a judgment ("First State Judgment") determining that the Deal Points agreement was not an enforceable contract. It held that Mr. Krystal "is not now, nor has he ever been the owner of any membership interest in Stat." The court of appeals affirmed the First State Judgment.

In June 2012, the remaining issues were set for trial in the state superior court, by a different judge. Although Mr. Haynie had answered the complaint, filed a counterclaim, and participated in the litigation, he did not appear on the date set for trial, so the court held that he was in default as to the remaining claims and dismissed his counterclaim with prejudice. The court mailed the notice of default to Mr. Haynie's addresses in Spokane, Washington and Coeur d' Alene, Idaho.

Thereafter, the court held a second trial, and Mr. Haynie again did not appear. Instead, Mr. Krystal introduced Mr. Haynie's testimony from the first trial. The state court issued findings of fact and conclusions of law ("Second State Judgment"). For reasons that the record does not explain, the Second State Judgment is markedly different from the First State

5

Judgment. In the Second State Judgment, the court held that the two versions of the Deal Points were binding agreements. The court went on to determine that Mr. Haynie breached the Deal Points by forming Stat without Mr. Krystal and refusing to pay Mr. Krystal his share of the Stat proceeds and profits. The court awarded Mr. Krystal $798,141.94 in damages, plus interest and costs.

**B.      The chapter 7 case and adversary proceeding**

Five years later, Mr. Haynie filed a chapter 7 petition. Mr. Krystal filed an adversary complaint to declare the Second State Judgment nondischargeable under §§ 523(a)(2), (a)(4), and (a)(6). He alleged that the Deal Points constituted a valid and binding agreement effective May 23, 2003. He stated that Mr. Haynie breached the Deal Points when he formed Stat without him and refused to share profits or sale proceeds with him. He asserted that Mr. Haynie intentionally converted the business opportunity and the business itself.

**C.      Trial and decision**

The bankruptcy court held a five-day trial on the adversary complaint in May 2020.[3] It issued its memorandum decision and held that the debt was nondischargeable under §§ 523(a)(2) and (a)(6).

---

[3] Mr. Haynie opted not to provide us with a copy of the trial transcript, probably because he does not challenge any of the bankruptcy court's factual findings. Although this is not fatal to his entire appeal, we may presume that nothing in the transcript would help his position. *See Gionis v. Wayne (In re Gionis)*, 170 B.R. 675, 680-81 (9th Cir. BAP 1994) ("We are entitled to presume that [an appellant who does not provide a

The bankruptcy court first considered whether either of the conflicting Washington state court judgments had preclusive effect. Finding Washington law silent on this issue, it relied on a Ninth Circuit case, *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988), which holds that when there are two conflicting judgments, preclusive effect is given to the judgment that is last in time. As such, the Second State Judgment was the operative judgment.

The court then considered whether the Second State Judgment satisfied the four-prong test for issue preclusion. It stated that only the first prong was at issue: whether Mr. Haynie had a full and fair opportunity to litigate the second state court trial and whether the issues were actually litigated. Mr. Haynie argued that he did not have notice of the second state court trial because he had moved from Washington to Idaho and did not receive the notice of default. But the bankruptcy court found that the state court sent the notice of default to his correct address in Idaho, so he had notice of the second state trial.

The court also held that the state court actually litigated the issues. It noted that, under Washington law, a "true" default (such as where the defendant does not appear at all) cannot satisfy the "actually litigated" requirement. However, it predicted that the Washington Supreme Court would apply issue preclusion where the party participated in litigation up

transcript] does not think the trial transcript helpful in that regard.").

until the default judgment. Because Mr. Haynie answered the complaint and participated in the first trial, the court concluded that the "actually litigated" requirement was satisfied.

Accordingly, the bankruptcy court relied on the preclusive effect of the Second State Judgment as to four issues: (1) that the Deal Points agreement was an enforceable and binding contract; (2) that Mr. Haynie breached the contract; (3) that his breach was intentional and wrongful; and (4) that Mr. Krystal was entitled to damages totaling $798,141.94 plus post-judgment interest and costs.

The court then turned to the remaining issues, which determined whether Mr. Haynie's debt was dischargeable. As to § 523(a)(2)(A), concerning a debt obtained by false representations, the bankruptcy court held, based on the evidence presented at trial, that Mr. Haynie knowingly and intentionally misrepresented his intentions to (1) form Stat with Mr. Krystal as a member and (2) rectify his failure to name Mr. Krystal as a member of Stat. It held that Mr. Krystal relied on Mr. Haynie's promises and was damaged by not receiving his share of the proceeds from the sale to Mr. Davis.

As to § 523(a)(6), pertaining to a debt for willful and malicious injury, the bankruptcy court held that Mr. Haynie's breach of contract was accompanied by willful and malicious tortious conduct. It held that the conduct was willful because it was intentional and Mr. Haynie knew that Mr. Krystal was substantially certain to suffer injury. It also determined

8

that Mr. Haynie's actions were malicious because they were wrongful, intentional, and injurious.[4]

The court issued its judgment in Mr. Krystal's favor. Mr. Haynie timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in affording the Second State Judgment issue preclusive effect and declaring the judgment debt nondischargeable under §§ 523(a)(2) and (a)(6).

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's determination that issue preclusion was available. *Black v. Bonnie Springs Family Ltd. P'ship (In re Black)*, 487 B.R. 202, 210 (9th Cir. BAP 2013). We also review de novo the bankruptcy court's legal conclusions, including its construction of § 523(a). *Hamilton v. Elite of L.A., Inc. (In re Hamilton)*, 584 B.R. 310, 318 (9th Cir. BAP 2018), *aff'd*, 785 F. App'x 438 (9th Cir. 2019) (citing *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002)).

"De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505

---

[4] The bankruptcy court rejected the § 523(a)(4) claim, which concerns fraud or defalcation, because the Deal Points did not expressly establish the requisite kind of

9

B.R. 914, 917 (9th Cir. BAP 2014).

If issue preclusion was available, we then review the bankruptcy court's application of issue preclusion for an abuse of discretion. *In re Black*, 487 B.R. at 210. To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

## DISCUSSION

Mr. Haynie argues on appeal that the bankruptcy court erred in giving issue preclusive effect to the Second State Judgment. He contends that the bankruptcy court should have relied on the First State Judgment in his favor or should not have afforded issue preclusive effect to either judgment. We discern no error.

## A. The bankruptcy court correctly predicted that Washington courts would adopt the last-in-time rule for conflicting judgments.

When applying issue preclusion, the bankruptcy court is required to "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was

fiduciary relationship between the parties.

10

rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Mr. Haynie argues that the bankruptcy court erred in accepting the last-in-time rule because Washington courts would not adopt such a rule. We conclude that the bankruptcy court did not err.

The parties agree that the Washington state courts have not weighed in on this issue, and we have not found any case on point. As such, we must best predict how the Washington Supreme Court would rule. *See Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001). We may rely on "intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004) (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1206 (9th Cir. 1998)).

The bankruptcy court relied on the Ninth Circuit's decision in *Robi*, 838 F.2d 318. In that case, the Ninth Circuit was faced with multiple conflicting judgments in different courts. It stated the general law:

> Courts are not required to apply *res judicata sua sponte*. Thus, if a second court to face a claim or issue is not presented with *res judicata* arguments, or rejects these arguments, an inconsistent judgment may arise. If two or more courts render inconsistent judgments on the same claim or issue, a subsequent court is normally bound to follow the most recent determination that satisfies the requirements of *res judicata*. . . . This is referred to as the "last in time" rule.

*Id.* at 322 (citing *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir. 1985)). The Ninth Circuit explained its reasoning:

11

When two inconsistent judgments exist, it is tempting for a court to reexamine the merits of the litigants' dispute and choose the result it likes best. There are important reasons to avoid this temptation. First, if one party could have raised *res judicata*, but did not, that litigant must bear the cost of its tactic or inadvertence. Second, the most recent court to decide the matter may have considered and rejected the operation of the prior judgment as *res judicata*, and *its* decision should be treated as *res judicata* on the preclusive effect of the prior judgment. Finally, the last in time rule is supported by the rationale that it end[s] the chain of relitigation . . . by stopping it where it [stands] after entry of the [most recent] court's judgment, and thereby discourages relitigation in [yet another] court. Therefore, even when we think that the most recent judgment might be wrong, we still give it *res judicata* effect so that finality is achieved and the parties are encouraged to appeal an inconsistent judgment directly rather than attack it collaterally before another court.

*Id.* at 322-23 (citations and internal quotation marks omitted) (alteration in original).

The Ninth Circuit's decision in *Robi* is consistent with the generally accepted rule. The Restatement (Second) of Judgments § 15 (1982) ("Restatement § 15") provides: "When in two actions inconsistent final judgments are rendered, it is the later, not the earlier, judgment that is accorded conclusive effect in a third action under the rules of res judicata."

An illustrious scholar, who later became a justice of the United States Supreme Court, agreed. "Under traditional res judicata doctrine, where there are conflicting judgments and each would be entitled to preclusive

12

effect if it stood alone, the last in time controls in subsequent litigation." Ruth B. Ginsburg, *Judgments in Search of Full Faith and Credit: The Last-in-Time Rule for Conflicting Judgments*, 82 Harv. L. Rev. 798, 798 (1969); *see also* 18 Charles Alan Wright, Arthur R. Miller & Edward Cooper, *Federal Practice & Procedure* § 4404 (3d ed. 2016) ("If a second action is pursued to entry of a final judgment inconsistent with a prior judgment, the second judgment ordinarily prevails whether the res judicata effects of the first judgment were ignored by the parties or expressly rejected by the court in the second action.").

In fact, an illustration in Restatement § 15 appears to contemplate this very situation:

> A sues B on a promissory note. B denies that he executed the note. There is a trial resulting in a verdict for B, and judgment is rendered in B's favor. A brings a second action against B on the note, and B defaults, and judgment is given for A for the amount of the note and interest thereon. Thereafter A brings an action against B on the second judgment. The judgment for B in the first action is no defense.

Restatement (Second) of Judgments § 15 illus. 1.

We see no reason why Washington courts would depart from this general rule giving preclusive effect to the last-in-time judgment.

Mr. Haynie acknowledges that illustration 1 of Restatement § 15 would appear to apply the last-in-time rule to the facts of the present case. However, he argues that Washington has not adopted Restatement § 15. While Washington appellate courts have not adopted this particular

13

section, the Washington Supreme Court has repeatedly relied on other sections of the Restatement (Second) of Judgments. *See, e.g., Reninger v. State Dep't of Corr.*, 951 P.2d 782, 790-91 (Wash. 1998) (Restatement (Second) of Judgments § 28); *Southcenter Joint Venture v. Nat'l Democratic Policy Comm.*, 780 P.2d 1282, 1285 (Wash. 1989) (Restatement (Second) of Judgments § 43); *Schoeman v. N.Y. Life Ins. Co.*, 726 P.2d 1, 3 (Wash. 1986) (Restatement (Second) of Judgments §§ 13, 22). He gives no reason why the Washington Supreme Court would not also adopt this section, given its reliance on other sections of this Restatement.

Additionally, he contends that the last-in-time rule is not applicable to two judgments within the same case. But he offers no authority for his argument and no reason why the rule would apply only to multiple final judgments entered in separate cases and not to multiple final judgments entered in a single case.

Mr. Haynie cites *Peterson v. Department of Ecology*, 596 P.2d 285, 289 (Wash. 1979), for the proposition that "[a]n ambiguous and inconsistent judgment should not be the basis for an estoppel by judgment." But *Peterson* was concerned with a single judgment that was ambiguous and internally inconsistent, making it difficult to determine what the court decided. In this case, the Second State Judgment is unambiguous and internally consistent. There is no reason to reject the last-in-time rule in this situation. *See Cummins v. Mullins*, 210 S.W. 170, 172 (Ky. 1919) ("Where there are two conflicting judgments rendered by the same court upon the

14

same rights of the same parties, growing out of the same contract, that which is later in time will prevail. Hence this court will treat the first judgment to all intents and purposes as of no binding effect.").

Mr. Haynie argues that the Washington state court of appeals affirmed the First State Judgment, so the bankruptcy court should have preferred that judgment. He states that the state court was bound to follow the appellate decision, not the erroneous Second State Judgment. But it is not our place to decide whether the Second State Judgment was "correct." As the Ninth Circuit stated, "the most recent decision 'is not binding because it is correct; it is binding because it is last.' This concept of finality is central to the entire body of *res judicata* doctrine." *Robi*, 838 F.2d at 328 (quoting *Americana Fabrics, Inc.*, 754 F.2d at 1530).

At oral argument, Mr. Haynie argued that, if there are two inconsistent judgments, neither of them should have issue preclusive effect. For the reasons given above, we think that the last-in-time rule is preferable and that the Washington courts would follow it.

Mr. Haynie also argues that, even if Washington law would generally recognize the last-in-time rule, it should not be applied in this case.

He argues that he could not have asserted that the First State Judgment had issue preclusive effect at the second trial because the state court entered the Second State Judgment against him by default. This ignores the bankruptcy court's factual finding that Mr. Haynie received notice of the trial yet did not participate. In other words, he could have

15

raised this defense, but chose not to. Nothing required the state court to ascertain the preclusive effect of the First State Judgment on its own motion. "The considerations of policy which support the doctrine of res judicata are not so strong as to require that the court apply them of its own motion when the party himself has failed to claim such benefits as may flow from them." Restatement (Second) of Judgments § 15 cmt. b. If Mr. Haynie disagreed with the Second State Judgment, he should have appealed immediately. *See Robi,* 838 F.2d at 328 ("If an aggrieved party believes that the second court . . . erred in not giving *res judicata* effect to the first court's . . . judgment, then the proper avenue of redress is appeal of the second court's judgment, not collateral attack in a third court." (citation omitted)); Ginsburg, *supra,* at 798-99 ("Under the last-in-time rule, if a defense based on the first judgment is not raised in the second action, the defense cannot be resurrected in a subsequent proceeding. . . . The decision not to raise the prior adjudication, or to discontinue the contest concerning its effect by failing to utilize an opportunity for direct review, settles the matter.").[5]

He also contends that the second trial was limited to damages, so the

---

[5] We also note that, under Washington law, a court always has discretion to refuse to apply issue preclusion if its application would result in an injustice. *See Reninger*, 951 P.2d at 789 (Court must not apply issue preclusion "so rigidly as to defeat the ends of justice, or to work an injustice." (quoting *Henderson v. Bardahl Int'l Corp.*, 431 P.2d 961, 967-68 (Wash. 1967))). Therefore, a court could decide not to give preclusive effect to the last-in-time judgment in order to avoid injustice in a particular case. The bankruptcy court did not exercise that discretion in this case, and we discern no abuse.

state court could not have properly considered whether any of the issues decided in the First State Judgment were afforded issue preclusive effect. As we explained above, preclusion does not depend on whether the judgment was correct.

In sum, we agree with the bankruptcy court that the Washington Supreme Court would follow the last-in-time rule, which potentially affords preclusive effect to the Second State Judgment despite the inconsistent First State Judgment.

## B. The bankruptcy court did not err in applying issue preclusion to the Second State Judgment.

The last-in-time rule applies only if the last judgment is itself entitled to preclusive effect. Mr. Haynie argues that it was error to give the Second State Judgment issue preclusive effect under Washington law. We disagree.

There is no dispute as to the standard for issue preclusion under Washington law:

> Collateral estoppel, also known as issue preclusion, bars the relitigation of issues that were decided in a previous proceeding involving the same parties. The court considers four factors to determine whether collateral estoppel applies:
>
> "(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied."

In addition, the issues to be precluded must have been actually litigated and necessarily decided in the first proceeding. The party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issues in the first proceeding.

*Sprague v. Spokane Valley Fire Dep't*, 409 P.3d 160, 183 (Wash. 2018) (citations omitted).

First, Mr. Haynie argues that the Second State Judgment did not necessarily and finally determine issues of his conduct and Mr. Krystal's reliance. As such, he contends that the bankruptcy court erred in finding that his breach of the Deal Points was intentional and wrongful and that Mr. Krystal relied on those misrepresentations.

Mr. Haynie is wrong because the bankruptcy court did not rely on issue preclusion to determine Mr. Haynie's mental state or Mr. Krystal's reliance. Rather, the bankruptcy court made its own findings as to these two issues based on the evidence presented at trial in the bankruptcy court. It stated in its written decision that:

> **Based on the evidence presented at trial**, including the evaluation of weight and credibility of witness testimony, this Court finds and concludes that **Haynie knowingly and intentionally misrepresented his intentions** to form Stat with Krystal as a member and, later, his intentions to remedy the failure to include Krystal as a member of Stat. **Krystal relied on Haynie's promises** and continued his relationship with Haynie and Stat. As a result, Krystal was damaged by not receiving his share of the profits of Stat or the Davis sale.

(Emphases added).

18

Second, Mr. Haynie argues that the issues determined in the Second State Judgment, including the validity and enforceability of the Deal Points, were not "actually litigated" because the Second State Judgment was effectively a default judgment.

The Ninth Circuit and many other courts have held that the "actually litigated" requirement "may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so." *FDIC v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th Cir. 1995); *see Backlund v. Stanley-Snow (In re Stanley-Snow)*, 405 B.R. 11, 20 (1st Cir. BAP 2009) (Most federal courts "have reasoned that if a party was afforded a reasonable opportunity to defend in the prior action but chose not to do so, the party could have reasonably foreseen the consequences of not defending the action and it would be 'undeserved' to give a 'second bite at the apple when he knowingly chose not to defend himself in the first instance.' Although a few courts have declined to adopt a 'substantial participation' exception, these courts are in the minority." (citations and footnote omitted)). Mr. Haynie correctly points out that the Washington Supreme Court has not spoken on this issue, but we see no reason why the Washington Supreme Court would not follow the rule in *Daily*. The contrary rule would allow a party to participate in a case until things start going badly, and then simply quit participating in order to get a second bite at the apple.

The bankruptcy court heard testimony and received evidence

concerning Mr. Haynie's ability to participate in the second state court trial. It found that he had fair notice of the state court proceedings and could have participated in the trial if he had wanted to. It thus found that he had a full and fair opportunity to litigate the issues determined in the Second State Judgment. We discern no error with these findings of fact.

Finally, Mr. Haynie argues that the bankruptcy court erred in applying "offensive" issue preclusion against him because he did not have an opportunity to defend himself against allegations of his "fraudulent and malicious conduct." He points to the *Robi* court's statement that "[a]llowing offensive collateral estoppel may also be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." 838 F.2d at 329 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 (1979)).

The bankruptcy court did not allow "offensive" issue preclusion in this case. In *Robi*, one of the plaintiffs (Williams) sought to use a judgment rendered in favor of another plaintiff (Robi) against the common corporate defendant. The court used the term "offensive" issue preclusion to describe that situation, where one plaintiff attempts to get the benefit of preclusion based on a judgment entered in favor of a different plaintiff. The *Robi* court said that Williams could not use Robi's judgment against the defendant because Williams had litigated his own case and had lost.  In such a situation, the court held, it would be unfair to give preclusive effect to the judgment not involving Williams in order to overturn a judgment against

Williams in a case in which he was a party. *Id.* at 330. In this case, Mr. Haynie was a party to the litigation throughout. Giving the Second State Judgment issue preclusive effect was not unfair.

## CONCLUSION

The bankruptcy court did not err in affording the Second State Judgment issue preclusive effect and concluding that the judgment debt was excepted from discharge under §§ 523(a)(2) and (a)(6). We AFFIRM.