# United States Court of Appeals
## For the First Circuit

No. 13-1869

IN RE: ANDREA LEVASSEUR,

Debtor.

OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY,

Appellee,

v.

ANDREA LEVASSEUR,

Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before
Lynch, Chief Judge,
Stahl and Lipez, Circuit Judges.

David G. Baker on brief for appellant.
Howard M. Brown, David C. Phalen, Lauren A. Solar, and Bartlett Hackett Feinberg P.C. on brief for appellee.

December 16, 2013

**LYNCH, Chief Judge**.  A customer's taking advantage of her bank's mistake led to this case.  Andrea Levasseur appeals from the district court's affirmance of the bankruptcy court's determination that her debt to Old Republic National Title Insurance Company ("Old Republic") was not dischargeable in bankruptcy because it was for money she obtained by false pretenses, see 11 U.S.C. § 523(a)(2)(A), and because it was a debt arising from willful and malicious injury, see id. § 523(a)(6).  Finding no error in either the bankruptcy or the district court decisions, we affirm.  See In re Levasseur, No. 12-12414-DPW, 2013 WL 2436688 (D. Mass. June 3, 2013); In re Levasseur, 482 B.R. 15 (Bankr. D. Mass. 2012).

This case is clear, and there is no need to write extensively, given the reasoning offered by the bankruptcy and district courts.  See Moses v. Mele, 711 F.3d 213, 216 (1st Cir. 2013).

                                   I.

The bankruptcy court made the following findings of fact, based in part on its own assessment of Levasseur's testimony.  In March 2003, Levasseur[1] entered into a loan agreement with Fleet Bank for a home equity line of credit secured by a second mortgage on her home on Wethersfield Street in Rowley, Massachusetts.  The original Home Equity Line credit limit was $124,200.  At the same

_____

[1] At this point, Levasseur was known as Andrea Sullivan.  On October 17, 2003, she married William Levasseur and took his name. We refer to her as Levasseur throughout.

-2-

time, Levasseur also opened an ordinary Fleet Checking Account, for which Fleet sent her a starter check booklet. The checking account number, 9467788365, appeared at the bottom of the starter checks. The checks allowed her to draw on her available credit by writing checks on this checking account, up to her credit limit.

On November 14, 2003, Levasseur sold the Rowley Property, and from the sale proceeds paid off both her first mortgage and the Fleet Home Equity Account in full. Levasseur knew that the Home Equity Account would no longer be available to her when she sold the Rowley Property. Since she had no equity left in the Rowley Property, there was no equity to secure a home equity line of credit to her. She had worked as a real estate agent and had participated in closings before.

By the time of the events of this case, Levasseur was living with her family in a different home in Byfield, Massachusetts that she purchased in June 2003, and she had notified Fleet of her new address. She did not, however, notify Fleet that she sold the Rowley Property.

Sometime before June 1, 2005, Fleet and Bank of America merged, and Bank of America became the successor by merger to Fleet with respect to Levasseur's Home Equity Line and checking account. Periodically, Levasseur received statements at her new address from Fleet or Bank of America regarding the Home Equity Account, because the credit line had never been formally closed following the sale

of the Rowley Property.[2] One such statement indicated that the available credit on the Home Equity Line was $124,200. The bankruptcy court found that from such statements, Levasseur knew it was possible that Fleet and Bank of America had inadvertently left the line of credit open.

By June 2005, Levasseur's husband's business was in financial distress, and her family was having trouble paying its bills on time. On June 15, she wrote a $50,000 check, made payable to "Andrea P. Sullivan," her former name, using one of her Fleet starter checks, which she had been provided to use with the checking account she had opened. The check displayed her checking account number, 9467788365; however, in the memo line, she wrote "75620032059124," which was her Home Equity Line account number. She endorsed the back of this check with two signatures: one as Andrea P. Sullivan and the other as Andrea Levasseur. She deposited that check into a Georgetown Savings Bank account that she shared with her husband. As of that date, the Fleet/Bank of America checking account bearing the number on the bottom of the starter check, 9467788365, was a closed account.

On June 16, she obtained an official check from Bank of America's Newburyport branch for $100,000 on her Fleet Home Equity Line, which she also deposited in her Georgetown Savings account.

_____

[2] Although the Home Equity Account had been paid in full, the formal discharge of the Home Equity Mortgage was not recorded until after the events of the case.

-4-

The Newburyport branch, which previously had been a Fleet branch, was where Levasseur had executed the closing documents for the Home Equity Line in 2003.

The first check (for $50,000) was returned for insufficient funds around June 21, because that check was drawn on her closed checking account. Her Georgetown Savings account was accordingly debited $50,000.

On July 19, Levasseur obtained a $24,200 cashier's check from the same Newburyport branch, again made payable to "Andrea P. Sullivan," which she endorsed and deposited in the Georgetown Savings account as well. The June 16 and July 19 official checks totaled $124,200, the exact limit on the Home Equity Line.

The bankruptcy court also found that the Newburyport Bank of America tellers, based on available records, could not have determined that the Home Equity Account should have been closed when the Rowley Property was sold and that Levasseur's check requests should accordingly have been denied. The bankruptcy court found that Levasseur's testimony that she thought at the time that she was drawing on a different loan than the Home Equity Account was "thoroughly implausible." In re Levasseur, 482 B.R. at 25.

Levasseur then failed to pay back the $124,200 drawn from the Rowley Home Equity Account. Bank of America commenced foreclosure proceedings on the Rowley Property. The new owners were insured by Old Republic, which paid the debt to avoid

foreclosure and took an assignment of all of Bank of America's rights against Levasseur. In October 2006, Old Republic brought suit against Levasseur in state court. When she failed to defend, a default judgment was entered against her on May 23, 2007. When Levasseur failed to satisfy an initial execution of judgment, the court issued an alias execution on September 12, 2007, in the amount of $159,845.95 plus postjudgment interest at a rate of 12 percent per year.

In December 2007, Levasseur filed for bankruptcy. In August 2008, Old Republic sought a determination that its pre-petition judgment was excepted from discharge as a debt for fraud, false pretenses or misrepresentation, 11 U.S.C. § 523(a)(2), and willful and malicious injury, id. § 523(a)(6). The bankruptcy court agreed on both grounds, In re Levasseur, 482 B.R. at 30, 32. We find no error and affirm.

## II.

This court's review directly addresses the bankruptcy court's decision, and we review findings of fact for clear error and conclusions of law de novo. Gannett v. Carp (In re Carp), 340 F.3d 15, 21 (1st Cir. 2003).

For the debt to be non-dischargeable in bankruptcy because it was obtained under false pretenses, see 11 U.S.C. § 523(a)(2)(A), Old Republic had to prove that Levasseur made a false representation with fraudulent intent (i.e., with

"scienter"), that she intended to induce the bank to justifiably rely on her misrepresentation, that the bank did in fact rely on the representation, and that the reliance caused a pecuniary loss. See Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997). A false pretense or misrepresentation can be created "when the circumstances imply a particular set of facts, and one party knows the facts to be otherwise," and where the silent party "may have a duty to correct what would otherwise be a false impression." In re Moen, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) (quoting In re Malcom, 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992)). Similarly, scienter is established where an individual "knows or believes that the matter is not as [s]he represents it to be." Palmacci, 121 F.3d at 787 (quoting Restatement (Second) of Torts § 526).

The record plainly supports the bankruptcy court's conclusion that Levasseur was fully aware that the Home Equity Account should no longer have been available for her use after the sale of the Rowley Property. Levasseur had not applied for any new lines of credit at Bank of America. The court did not err in rejecting her implausible contention that she thought she was drawing on a new line of credit (in the exact amount of the earlier Home Equity Line). When she twice visited the Newburyport branch to obtain certified checks from an account that she knew should not have been available, Levasseur acted under false pretenses and with an intent to defraud.

-7-

As to the remaining elements required under § 523(a)(2)(A), the bankruptcy court was again correct. Levasseur "did not alert the bank to what [s]he knew to be an error because [s]he planned to use the error to h[er] advantage." In re Moen, 238 B.R. at 793. Her intent was to obtain the two bank checks -- to induce the bank's reliance on her request -- and it is plain that the bank did in fact rely on her representations. In light of the information available to the Bank of America tellers at the time, it was not at all apparent to them that the account should have been closed, and their reliance on Levasseur's representations was justifiable. See In re Aoki, 323 B.R. 803, 816 (B.A.P. 1st Cir. 2005) (noting the "relatively low" standard for justifiable reliance and stating that "a party may justifiably rely on a misrepresentation even when he could have ascertained its falsity by conducting an investigation"). Finally, the Bank's pecuniary losses that resulted from Levasseur's actions are quite clear.

We affirm the bankruptcy court's finding that the debt is non-dischargeable under § 523(a)(2)(A). This alone is sufficient to sustain the outcome below, but we also affirm the bankruptcy court's alternative holding that the debt is not dischargeable on the basis of § 523(a)(6).

Section 523(a)(6) of the Bankruptcy Code exempts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C.

§ 523(a)(6) (emphasis added).  An injury is malicious "if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will."  Printy v. Dean Witter Reynolds, Inc., 110 F.3d 853, 859 (1st Cir. 1997) (quoting 4 Collier on Bankruptcy ¶ 523.12 (15th ed. 1996)).  The injury must have been committed in "conscious disregard of one's duties."  Id.  Willfulness requires "a showing of intent to injure or at least of intent to do an act which the debtor is substantially certain will lead to the injury in question."  In re Neronha, 344 B.R. 229, 231 (Bankr. D. Mass. 2006).

The record abundantly supports the bankruptcy court's determination that Levasseur's "objectively wrongful" actions, "committed in conscious disregard of her duty not to deceive," Levasseur, 482 B.R. at 32, were malicious.  Likewise, the willfulness requirement was satisfied by Levasseur's deliberate use of a false pretense -- that the Home Equity Line was and should still have been available to her following the Rowley Property sale -- to obtain $124,200 from Bank of America.

Further, our decision in Printy supports this result.  The debtor in Printy took advantage of a stock brokerage's computer error, which incorrectly credited his account an extra $3.5 million, by withdrawing and borrowing against funds that the debtor knew he did not own.  110 F.3d at 859-60.  So too here: Levasseur took full advantage of Bank of America's error in failing to close

her Home Equity Account when she sold the Rowley property and gave the Bank no notice of the sale. The bankruptcy court was correct to find the debt to be non-dischargeable, and we affirm on those grounds. We need not reach the other grounds for non-dischargeability under § 523(a).

Levasseur mounts an additional argument. She contends that the bankruptcy court erred when it granted Old Republic's motion to strike a portion of her pretrial memorandum and for sanctions. The bankruptcy court granted Old Republic's motion after Levasseur missed multiple deadlines set by the pretrial order and failed to cooperate in the submission of a joint pretrial memorandum. A bankruptcy court "has broad discretion to preserve the integrity of a pretrial order," and we have noted that "an appellate court generally should not interfere with a trial court's decision to admit or exclude evidence based on its interpretation of its own pretrial order." Alberty-Vélez v. Corporación de P.R. para la Difusión Pública, 242 F.3d 418, 423 (1st Cir. 2001). Our review is for abuse of discretion, see id., and there was none.

### III.

The judgment of the bankruptcy court is affirmed. Costs are awarded to Old Republic.