IN RE: Peter J. PORCARO, Debtor.

Michael O'Rorke and Beth O'Rorke,
Plaintiffs-Appellees,

v.

Peter J. Porcaro, Defendant-Appellant.

BAP NO. MW 15-026
Bankruptcy Case No. 10-45391-CJP
Adversary Proceeding No. 11-04010-CJP

United States Bankruptcy Appellate Panel
of the First Circuit.

February 3, 2016

See also 2008 WL 4456752, 2009 WL
4573455.

Peter J. Porcaro, pro se, on brief for Defendant-Appellant.

Michael J. Heineman, Esq., and Scott R. Pearl, Esq., on brief for Plaintiffs-Appellees.

Before Deasy, Harwood, and Cary, United States Bankruptcy Appellate Panel Judges.

Cary, U.S. Bankruptcy Appellate Panel Judge.

Peter J. Porcaro ("Porcaro"), a home improvement contractor, appeals from a bankruptcy court order granting summary

judgment in favor of judgment creditors, Michael O'Rorke and Beth O'Rorke (collectively, the "O'Rorkes"),[1] and a bankruptcy court order denying his motion for summary judgment (collectively, the "Orders"). On appeal, Porcaro contends that entering summary judgment in the § 523(a)(6) proceeding was error because the bankruptcy court incorrectly afforded preclusive effect to the O'Rorkes' pre-bankruptcy, state court judgment. [2] For the reasons discussed below, we **AFFIRM** the Orders.

## BACKGROUND

### I. Pre–Bankruptcy Events

In August 2004, the O'Rorkes hired Porcaro to install eleven replacement windows in their Westborough, Massachusetts home. The contract they entered into required Porcaro to install screens, locks, and custom-made "Majesty" windows, and to dispose of the old windows. The O'Rorkes were to pay him $19,100.00 in the following installments: an initial deposit of $6,366.00; an additional installment of $10,000.00 upon delivery of the windows; and a final payment of the remaining $2,734.00 balance upon completion.

Porcaro retained Paul Meredith ("Meredith"), an installation subcontractor, to do the work at the O'Rorkes' home. Although the job required a permit, Porcaro did not obtain one. When Meredith arrived to perform the work, he noticed that the new windows were approximately 3/4 of an inch too small for the window openings. When he asked Porcaro about this, Porcaro instructed him to proceed with the window installation. Meredith did as he was told.

When the installation was complete, the O'Rorkes paid Porcaro all but $200.00 of the contract price, which they withheld due to minor screen damage. When Porcaro refused to pay Meredith for the work, Meredith informed the O'Rorkes about the problem with the windows.

### A. The Arbitration

Thereafter, the parties submitted to arbitration through the Commonwealth of Massachusetts Contractor Home Improvement Arbitration Program. Additionally, the O'Rorkes made a demand upon Porcaro pursuant to Mass. Gen. Laws ch. 93A ("Ch.93A"). After a hearing conducted on June 7, 2005, the arbitrator found that Porcaro had installed windows that were too small and awarded the O'Rorkes $11,300.00 in damages, which sum included $9,000.00 to cover the estimated cost of new replacement windows and $2,300.00 for "patchwork."

### B. State Court Proceedings

Porcaro appealed the arbitrator's decision by filing a complaint with the Commonwealth of Massachusetts Trial Court, District Court Department, Westborough Division, alleging breach of contract, malicious prosecution, conspiracy to breach a contract, and breach of the covenant of good faith and fair dealing. The O'Rorkes counterclaimed for breach of contract and violations of Ch. 93A. In February 2007, the case was transferred to the Marlborough Division.

---

1. In the state court proceedings, discussed infra, "O'Rorke" is occasionally spelled "O'Rourke." We adhere, however, to the spelling which the O'Rorkes used in their bankruptcy court and Panel submissions: "O'Rorke."

2. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.*

In March 2007, the trial judge conducted a two-day bench trial. This appeal was not limited to a narrow review of the arbitration award but, rather, was by statute a de novo proceeding, designed to resemble an original trial court action more than an ordinary appeal. See Mass. Gen. Laws ch. 142A, § 4(e). Both parties presented evidence, including expert testimony. Porcaro appeared pro se, and, in addition to calling witnesses, testified on his own behalf. The trial yielded approximately 800 pages of documents and testimony.

Meredith testified, on behalf of the O'Rorkes, that during the installation, he discovered every window that was going to be installed was too small for the window openings. In fact, one of the windows almost fell through the opening. He knew this meant he would be unable to properly install the windows. He testified he informed Porcaro that the windows were not the correct size, that they should not be installed, and that he wanted to re-install the old windows until they could order the right size. He further testified that instead of ordering the correct windows, Porcaro directed him, without the O'Rorkes' knowledge, to install the incorrect windows by filling the gaps with wood, a technique called "blocking." When Meredith told Porcaro that he did not have any wood to fill in the gaps, Porcaro responded, "I'll bring you some." According to Meredith, Porcaro threatened to withhold payment if he mentioned anything about it to the O'Rorkes. Meredith also testified Porcaro took affirmative steps to conceal the improper installation from the O'Rorkes by installing wider casings than had originally been used around the windows.

Robert Jeffrey Stevenson ("Stevenson"), a contractor who had previously worked for Michael O'Rorke's company, provided expert witness testimony for the O'Rorkes, stating he had examined the windows and determined they were too small and installed incorrectly. According to Stevenson, when he took the casings off one of the windows, placed his hand in the center of the window, and pushed with little effort, "the window moved about an inch." He also testified that a newly constructed window would need to be installed because the original window frame had been cut, removed, or otherwise altered. The blocking which was installed at Porcaro's direction would have to be removed, as well as what was left of the original window frames, and the siding would need further repair. Stevenson went on to testify, without objection by Porcaro, that the cost to put the O'Rorkes in as good a position as they would have been had Porcaro installed the windows properly would be $20,000.00. He stated: "I'm going to just shoot from the hip, I would say probably about twenty grand, probably a shade more."

In rebuttal, Porcaro's expert, Peter F. DePesa ("DePesa"), a contractor and former building inspector for the town of Andover, Massachusetts, testified that the windows were installed correctly, and that when he inspected the subject windows he "saw no old filler wood." He further testified that the "job look[ed] good . . . ." In response to an inquiry from the bench, he explained that if the windows were too small, it "[a]bsolutely would be visible." DePesa also opined that in the O'Rorkes' house, the rough openings were off "and that's why they put the filler in." With respect to the permit issue, DePesa explained that it was discretionary with local building inspectors whether to require a building permit for window replacement.

In a written opinion issued on March 26, 2007, and revised on April 12, 2007 (the "State Court Decision"), the trial judge decided in favor of the O'Rorkes, awarding

them $20,000.00 in damages as the replacement cost for the eleven windows, which he trebled, in accordance with Ch. 93A, to $60,000.00, plus interest, attorneys' fees, and costs. The trial judge prefaced his findings with the observation that the "[i]nstallation of windows that are too small creates a danger of water and other damage." He went on to state:

> With regard to [Porcaro's] Complaint, I find that the evidence I heard supports many of the arbitrator's findings. I find that [Porcaro] wil[l]fully failed to obtain a necessary building permit and wil[l]fully had windows installed in [the O'Rorkes'] home which he knew to be too small for the openings. I do not find that [the O'Rorkes] breached their contract with [Porcaro] and I do not find that there was any conspiracy between [the O'Rorkes] and Meredith to breach the contract. [The O'Rorkes] had every reason to send [Porcaro] a [Ch. 93A] demand letter; [Porcaro's] Counts for malicious prosecution and breach of the covenant of good faith and fair dealing are frivolous.
>
> Judgment shall enter for [the O'Rorkes] on all Counts of [Porcaro's] Complaint. With regard to the counterclaims, I find that [Porcaro] breached the contract by having windows installed which did not properly fit. In addition, I find that [Porcaro] violated [Ch.] 93A in two respects. First, the failure to obtain a building permit is a violation of G.L. c. 142A, s.2 and is a per se violation of [Ch. 93A]. Second, the knowing and wil[l]ful violation of the contract by installing windows of an improper size is as egregious a violation of consumer protection laws as there can be. The evidence I heard supports a larger damage award than given by the arbitrator.
>
> Judgment shall enter for [the O'Rorkes] on their Counterclaim for $20,000 which

shall be trebled to $60,000 plus applicable interest and costs.

> After hearing, I award attorneys' fees and costs in the amount of $20,269.93 as requested in the attorneys' fee application and its supplement.

(footnote omitted).

On April 12, 2007, the Marlborough district court entered judgment against Porcaro in the amount of $84,320.34. Porcaro moved for a new trial and the motion was denied. Thereafter, Porcaro appealed to the Commonwealth of Massachusetts Appellate Division of the District Court Department Northern District (the "Appellate Division"). On September 25, 2008, a three-judge panel of the Appellate Division issued an eleven-page opinion, and a Decision and Order affirming the judgment of the state court and dismissing Porcaro's appeal. *Porcaro v. O'Rourke*, 2008 Mass. App.Div. 218 (2008).

On November 17, 2008, Porcaro filed his third appeal, which resulted in the affirmance of the Decision and Order of the Appellate Division in December 2009.

> The Appeals Court ruled:
>
> Our review of the parties' written submissions and the record on appeal persuades us that [Porcaro's] claims are without merit. Moreover, these claims were satisfactorily addressed in the thoughtful and comprehensive decision of the Appellate Division of the District Court department. No error or other abuse of discretion having been made to appear, we discern no basis on which to disturb the judgment on appeal.

*Porcaro v. O'Rorke*, 918 N.E.2d 97, 2009 WL 4573455 at *1 (2009).

On December 29, 2009, Porcaro filed an Application for Further Appellate Review to the Supreme Judicial Court, which it denied on January 27, 2010. *Porcaro v.*

*O'Rourke,* 455 Mass. 1109, 920 N.E.2d 878 (2010).

## II. Bankruptcy Court Proceedings

In October 2010, Porcaro filed a voluntary petition for chapter 7 relief in the United States Bankruptcy Court for the District of Massachusetts. On his Schedule D–Creditors Holding Secured Claims, Porcaro listed the O'Rorkes as the holders of a $100,000.00 disputed judicial lien on real estate located at 320 Putnam Hill Road, Sutton, Massachusetts.

In January 2011, the O'Rorkes. commenced the adversary proceeding which is the subject of this appeal with a single-count complaint, wherein they objected to the discharge of Porcaro's judgment debt pursuant to § 523(a)(6). In the complaint, they alleged, in pertinent part:

> In his decision [the trial judge] found that "[debtor] wil[l]fully failed to obtain a necessary building permit and wil[l]fully had windows installed in [creditors] home which [debtor] **knew** to be too small for the openings." . . .
>
> Further, [the trial judge] specifically found that "the **knowing and wil[l]ful** violation of the contract by installing windows of an improper size is as egregious a violation of consumer protection laws as there can be." . ...

Porcaro answered the complaint in February 2011, denying that a permit was required. As "affirmative defenses," he alleged, in pertinent part: (a) "nothing in [the] complaint . . . warrant[ed] a denial of a discharge"; (b) the State Court Decision "stated nothing about fraud"; (c) there was no finding that the installation of the windows was inadequate, and, in fact, the O'Rorkes "never had to spend one cent to pay anyone to repair or replace any of the windows"; and (d) if the windows were too small, "it was not an intentional act."

In March 2015, Porcaro filed a motion for summary judgment, an accompanying affidavit, and exhibits [3] (the "Summary Judgment Motion"), arguing that his "conduct did not cause an intentional, willful or malicious injury to the plaintiffs within the meaning of § 523(a)(6). . . ." Relying on *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), and *Printy v. Dean Witter Reynolds, Inc.,* 110 F.3d 853 (1st Cir.1997), he elaborated:

> The "willful and knowing" standard for purposes of [Ch.] 93A is not the same as the standard for willfulness under § 523(a)(6). Under § 523(a)(6), only "a debtor who intentionally acts in a manner he knows, or is substantially certain, will harm another may be considered to

**3.** Porcaro's exhibits included: A) a portion of the transcript of Michael O'Rorke's deposition, wherein he testified, inter alia, that he learned that Porcaro instructed Meredith to install the windows even though Porcaro knew they were too small; B) a copy of the contract for window installation executed by the O'Rorkes and Porcaro; C) a copy of the decision of the arbitrator; D) a portion of the transcript of the state court hearing, featuring testimony by Stevenson; E) an excerpt from the transcript of the state court hearing, featuring a portion of the cross-examination and redirect examination of Stevenson; F) excerpts from the transcript of the state court hearing, featuring portions of the direct examination of DePesa, and the affidavit of DePesa, wherein he averred that the windows were properly installed; G) an excerpt from the transcript of the state court hearing, featuring another portion of the direct examination of DePesa; H) a copy of a quitclaim deed dated April 29, 1999 conveying title to the Property to the O'Rorkes, and a copy of another quitclaim deed dated August 28, 2007, whereby the O'Rorkes conveyed the Property for the sum of $380,000.00; I) a copy of the state court judgment dated April12, 2007; J) the affidavit of Porcaro, wherein he averred, inter alia, that the windows he installed in the O'Rorkes' home had not been replaced and were, in fact, "a big selling point of the home . . . ."; and K) a list of the foregoing summary judgment exhibits, with brief descriptions.

have intended the harm and, therefore, to have acted willfully." ...

Noting that the denial of a discharge is a harsh and drastic penalty, Porcaro requested dismissal of the complaint, plus fees and costs.

The O'Rorkes filed a motion for summary judgment (the "Cross–Motion") on March 7, 2015, arguing that the state court findings were binding on the bankruptcy court based on collateral estoppel principles. In support, they asserted the State Court Decision met the requirements of collateral estoppel established by Massachusetts law, including that:

1) there was a valid and final judgment on the merits in the prior adjudication;

2) the party against whom estoppel is asserted was a party to the prior litigation;

3) the issue in the prior adjudication is identical to the issue in the current litigation; and,

4) the issue in the prior litigation was essential to the earlier judgment.

They further argued:

With respect to this matter, there can be no dispute that there was a valid and final judgment on the merits in the district court and that the party against whom estoppel is asserted (the debtor) was a party to that prior litigation. The debtor's conduct was an essential element in the District Court matter and which led [the trial judge] to treble the award and award the creditors' attorneys' fees and costs. *See* Ex. B.

Citing *Geiger, supra,* the O'Rorkes maintained that the trial judge's findings satisfied the Supreme Court's require-ments for "willfulness" under § 523(a)(6), namely that "the actor ... intend the injury, not just the act that leads to the injury." They explained:

Applying this standard for willfulness, it is clear from [the trial judge's] findings that the debtor knew that his conduct was substantially certain to cause injury to the creditors. The debtor wil[l]fully failed to obtain a necessary building permit and wil[l]fully had windows installed in [creditors] [sic] home which debtor **knew** to be too small for the openings.[ ] ... The debtor, an experienced contractor himself, was told by an experienced window installer (Meredith), at the time of the installation, that the windows were too small.... The debtor, while also failing to obtain the required building permit, directed Meredith to install the windows anyway.... Moreover, the debtor took affirmative steps to conceal the improper installation from the creditors..... Based on the facts found by the District Court, it is easy to objectively discern that the debtor specifically intended to injure the creditors.

The O'Rorkes additionally contended the State Court Decision satisfied the "maliciousness" requirement under § 523(a)(6), insofar as the record established that Porcaro's conduct was "wrongful and without just cause or excuse." Finally, the O'Rorkes claimed Porcaro did not qualify as an "honest but unfortunate debtor," deserving of a discharge.

The O'Rorkes subsequently filed an objection to the Summary Judgment Motion, together with a supporting memorandum of law, and accompanying affidavits and exhibits.[4] The substance of their objection

---

4. Their exhibits included: A) the decision of the arbitrator; B) the State Court Decision; C) the Decision and Order and the Opinion of the Appellate Division dated September 25, 2008; D) the decision of the Appeals Court, pursuant to Rule 1:28, dated December 8, 2009; E) Notice of Denial of F.A.R Application; F) sworn testimonial of Meredith; and G) trial testimony of Meredith.

largely mirrored the argument set forth in their Cross–Motion.

On April 9, 2015, Porcaro filed an opposition to the Cross–Motion, objecting to the entry of summary judgment in the O'Rorkes' favor and accusing them of making "inflammatory bad faith statement[s] ... for an improper purpose to harass, intimidate, humiliate and to intentionally prejudice and influence the court's opinion of the debtor...." He continued to maintain that his conduct did not satisfy the requirements for nondischargeability of a debt under § 523(a)(6).

At the April 22, 2015 hearing on the parties' summary judgment motions, the bankruptcy court granted the Cross–Motion and denied the Summary Judgment Motion, ruling from the bench, in pertinent part, as follows:

> [T]he question [ ] is, based on the final decision of the district court to which I am bound ... are there sufficient findings to establish that the conduct of Mr. Porcaro that gives rise to the debt was willful and malicious, or do I need to have a trial here to be able to make those findings?
>
> And after reviewing carefully the decision of [the trial judge] in the district court that was handed down in March of 2007, and the decision of the Appellate Division of the district court—a three-judge panel that came down after [the trial judge's] decision in which the panel affirmed [the trial judge]; that was in April of 2007, so a month later—I believe that there are sufficient findings in the district court's decision to justify my finding—not to justify it, but to mandate under principles of collateral estoppel and comity of courts, the Rooker–Feldman doctrine, to mandate my finding here that the conduct of Mr. Porcaro was willful and malicious, and satisfies the requirements of Section 523(a)(6).

> We all know Mr. Porcaro's papers show an outstanding understanding of the legal principles for someone who is not an attorney. We all know that the United States Supreme Court has mandated that the standard for willfulness under 523(a)(6) is the intentional infliction of injury, not ... an intentional act that leads to an injury, but the intentional infliction of an injury, and the cases that interpret the meaning of intentional injury speak in terms of an action that the perpetrator intends to cause injury to another or ... it is clear as an objective fact that the action of the perpetrator will cause such injury.
>
> . . .
>
> Here, we have a finding by [the trial judge] that the defendant, Mr. Porcaro, knew before the windows were installed that they were too small. I'm not going to allow Mr. Porcaro to relitigate that fact. It is a fact that was found by the district court and it was affirmed by the Appellate Division and that's what I'm stuck with. Mr. Porcaro was told and he knew before the windows were installed that they were too small, and he told Mr. Meredith to go ahead and put them in anyway.
>
> So he intentionally acted in a way that ... did damage to the [O'Rorkes'] property. That is the fact that was found by the district court. And the district court uses a term: Mr. Porcaro "willfully had windows installed in the defendant's home which he knew to be too small for the openings." So the district court, I think, has found that Mr. Porcaro's conduct satisfies the test of the Supreme Court in the *Geiger* case, which is the basis for 523(a)(6) liability.
>
> In terms of maliciousness, the standard is straightforward. It's that the injury be wrongful and committed without just cause or excuse. And again, I find that

[the trial judge's] decision and findings of fact in his decision where he found a knowing and willful violation of the contract by installing windows of an improper size, which he calls an egregious violation of consumer protection laws, satisfies the maliciousness requirement of 523(a)(6).

...

I am bound by ... the final decision of the state court.... Those windows were too small. That's what the court found, and the O'Rorkes were damaged, and you knew about it, and ... those are the findings.

So for all of those reasons, I'm going to grant the O'Rorke[s'] motion for summary judgment, and rule that the indebtedness ... of Mr. Porcaro to the O'Rorkes is nondischargeable under Section 523(a)(6). Having done so, there is no need to ... have further argument on Mr. Porcaro's motion for summary judgment.... Mr. Porcaro's motion for summary judgment is denied.

On April 22, 2015, the bankruptcy court entered the Orders. This appeal ensued. On appeal, the parties essentially reiterate the positions which they asserted in the proceedings below.

### JURISDICTION

A bankruptcy appellate panel is "duty-bound" to determine its jurisdiction before proceeding to the merits, even if not raised by the litigants. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724, 725–26 (1st Cir. BAP 1998) (citation omitted) (internal quotation omitted). A panel may hear appeals from "final judgments, orders and decrees...." 28 U.S.C. § 158(a)(1); *see also Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). An order granting summary judgment, where no counts remain, is a final order. *Harrington v. Donahue (In re Donahue)*, BAP No. NH 11–026, 2011 WL 6737074, at *8 (1st Cir. BAP Dec. 20, 2011). Accordingly, we have jurisdiction to hear this appeal.

### STANDARD OF REVIEW

The Panel applies a de novo standard of review to orders granting summary judgment. *See Backlund v. Stanley–Snow (In re Stanley–Snow)*, 405 B.R. 11, 17 (1st Cir. BAP 2009) (citations omitted). In addition, "[t]he applicability of the ... collateral estoppel doctrine presents a question of law requiring de novo review." *Blacksmith Invs., Inc. v. Woodford (In re Woodford)*, 418 B.R. 644, 650 (1st Cir. BAP 2009). De novo review means that "the appellate court is not bound by the bankruptcy court's view of the law." *Kagan v. Stubbe (In re El San Juan Hotel Corp.)*, 239 B.R. 635, 645 (1st Cir. BAP 1999), *aff'd*, 230 F.3d 1347 (1st Cir.2000).

### DISCUSSION

### I. Applicable Law

### A. The Summary Judgment Standard

The Panel has described the summary judgment standard as follows:

"In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056." *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 762 (1st Cir.1994). "By its express terms, the rule incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure." *Id.; see also* Fed. R. Bankr.P. 7056; Fed. R.Civ.P. 56. "It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." *In re Varras-*

*so,* 37 F.3d at 763 . . . . The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in the original). *Weiss v. Wells Fargo Bank, N.A. (In re Kelley),*498 B.R. 392, 397 (1st Cir. BAP 2013) (footnote omitted). Where, as here, there are cross-motions for summary judgment, "we employ the same standard of review, but view each motion separately, drawing all inferences in favor of the non-moving party." *Fadili v. Deutsche Bank Nat'l Trust Co.,* 772 F.3d 951, 953 (1st Cir.2014) (citation omitted).

## B. The Doctrine of Issue Preclusion

■■■ "The doctrine of issue preclusion, also referred to as collateral estoppel, bars the relitigation of issues determined in prior court actions." *Gray v. Tacason (In re Tacason),* 537 B.R. 41, 50 (1st Cir. BAP 2015) (footnote omitted) (citations omitted). "[Issue preclusion] principles . . . apply in discharge exception proceedings pursuant to § 523(a)." *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "As a result, where there has been a prior state court judgment, the bankruptcy court's ultimate dischargeability determination will be governed by any factual issues that were actually and necessarily decided by the state court." *B.B. v. Bradley (In re Bradley),* 466 B.R. 582, 586 (1st Cir. BAP 2012) (citation omitted) (internal quotations omitted). "That Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts." *Livingston v. Transnation Title Ins. Co. (In re Livingston),* 372 Fed.Appx.

613, 617 (6th Cir.2010) (citation omitted) (internal quotations omitted).

■■■ "Under the full faith and credit statute, 28 U.S.C. § 1738, the preclusive effect of a state court judgment in a subsequent nondischargeability proceeding under federal bankruptcy law is governed by the collateral estoppel law of the state from which the judgment is taken." *Stowe v. Bologna (In re Bologna),* 206 B.R. 628, 630–31 (Bankr.D.Mass.1997) (footnote omitted) (citations omitted). Therefore, we employ Massachusetts issue preclusion law.

■■■ The Supreme Judicial Court has stated that issue preclusion applies when:

"(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication. Additionally[,] the issue decided in the prior adjudication must have been essential to the earlier judgment."

*Pisnoy v. Ahmed (In re Sonus Networks, Inc. S'holder Derivative Litig.),* 499 F.3d 47, 56–57 (1st Cir.2007) (quoting *Kobrin v. Bd. of Registration in Med.,* 444 Mass. 837, 832 N.E.2d 628, 634 (2005)). "Massachusetts courts also require that appellate review must have been available in the earlier case before issue preclusion will arise." *Id.* at 57 (citing *Sena v. Commonwealth,* 417 Mass. 250, 629 N.E.2d 986, 992 (1994)). "The party asserting the doctrine has the burden of proving that all the requirements have been met." *Trenwick Am. Reinsurance Corp. v. Swasey (In re Swasey),* 488 B.R. 22, 33 (Bankr.D.Mass. 2013) (citing *In re Bradley,* 466 B.R. at 586). "To meet this burden, the moving party must have pinpointed the exact issues litigated in the prior action and intro-

duced a record revealing the controlling facts." *In re Bradley*, 466 B.R. at 586 (footnote omitted) (citation omitted).

### C. Elements for Nondischargeability Under § 523(a)(6)

Section 523(a)(6) excepts from discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). To except a debt from discharge under § 523(a)(6), a creditor must show: (1) the debtor injured him or his property; (2) the debtor's actions were willful; and (3) the debtor's actions were malicious. *Jones v. Svreck (In re Jones)*, 300 B.R. 133, 139 (1st Cir. BAP 2003). "The creditor bears the burden of proving his claim under § 523(a)(6) by a preponderance of the evidence, ... but to obtain summary judgment, the record must compel a determination of nondischargeability as a matter of law." *In re Tacason*, 537 B.R. at 49–50 (citations omitted).

### 1. Meaning of Willful

The Supreme Court has instructed that the word "willful," as used in § 523(a)(6), "modifies the word 'injury,' indicating that nondischargeability under that section therefore requires 'a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.' " *In re Bradley*, 466 B.R. at 587 (quoting *Geiger*, 523 U.S. at 61–62, 118 S.Ct. 974). It further explained that "[i]ntentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.' " *Geiger*, 523 U.S. at 61–62, 118 S.Ct. 974 (citing *Restatement (Second) of Torts* § 8A)).

"In light of the Supreme Court's citation to the *Restatement (Second) of Torts*, courts have concluded that the Supreme Court meant the willfulness ele-

ment to include actions intentionally done and known by the debtor to be 'substantially certain to cause injury.' " *In re Bradley*, 466 B.R. at 587 (citation omitted) (internal quotations omitted). As one bankruptcy court within this circuit explained:

> The "substantially certain" alternative is a prominent aspect of the *Restatement* section the *[Geiger]* Court embraces. *See Restatement (Second) of Torts*, *supra*, § 8A. It is an ingredient of the text of § 8A and comment b., as well as the first illustration. Although the Court did not cite comment b., it could be of some significance to future applications of § 523(a)(6). It reads:
>
> > All consequences which the actor desires to bring about are intended, as the word is used in this Restatement. Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.

*McAlister v. Slosberg (In re Slosberg)*, 225 B.R. 9, 19 (Bankr.D.Me.1998) (quoting *Restatement (Second) of Torts* § 8A cmt. b). "Thus, a debtor who intentionally acts in a manner he knows, or is substantially certain, will harm another may be considered to have intended the harm and, therefore, to have acted willfully within the meaning of § 523(a)(6)." *Id.* (footnote omitted).

### 2. Meaning of Malice

Prior to *Geiger*, the First Circuit determined that § 523(a)(6)'s element of "malice" requires the creditor to show that the injury was caused " 'without just cause or excuse.' " *In re Bradley*, 466 B.R. at 587 (quoting *Printy*, 110 F.3d at 859). This circuit continues to apply the *Printy* standard post-*Geiger*. *Id.* (citations omit-

ted); *see also Old Republic Nat'l Title Ins. Co. v. Levasseur (In re Levasseur)*, 737 F.3d 814, 818 (1st Cir.2013) (stating that an injury is malicious "if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will") (citation omitted) (internal quotations omitted).

### D. Mass. Gen. Laws Ch. 93A

 To prevail at summary judgment on a § 523(a)(6) claim by invoking issue preclusion, the O'Rorkes must have demonstrated that in entering judgment under Ch. 93A, the state court necessarily decided each of the elements to establish nondischargeability. To determine this, we must examine the State Court Decision. Chapter 93A makes unlawful " 'unfair or deceptive acts or practices in the conduct of any trade or commerce.... ' " *Commonwealth v. Hale*, 618 F.2d 143, 146 (1st Cir.1980) (quoting Mass. Gen. Laws ch. 93A, § 2). "Substantive liability under [Ch.] 93A 'requires a showing of conduct that (1) falls within the penumbra of some common-law, statutory, or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to consumers or other business persons.' " *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F.Supp.2d 1, 99–100 (D.Mass.2012) (citations omitted), *aff'd*, 775 F.3d 109 (1st Cir.2014). Chapter 93A, § 9(3), allows multiple damages of from two to three times actual damages for "a *willful or knowing* violation of ... section two...." Mass. Gen. Laws ch. 93A, § 9(3) (emphasis added). The "willful or knowing" requirement "is directed against callous and intentional violations of the law...." *Heller v. Silverbranch Constr. Corp.*, 376 Mass. 621, 382 N.E.2d 1065, 1070 (1978). The Supreme Judicial Court has said that "a finding of 'wil[l]ful' conduct within the meaning of [Ch.] 93A is satisfied where the defendant has acted recklessly." *Kattar v. Demoulas*, 433 Mass. 1, 739 N.E.2d 246, 259 (2000) (citations omitted). On the other hand, courts equate "knowing" conduct "with intentional acts." *Id.* (citation omitted) (internal quotations omitted). "Ultimately, [Ch.] 93A ties liability for multiple damages to the degree of the defendant's culpability." *Id.* (citation omitted).

## II. Analysis

### A. The Issue on Appeal

 In order for issue preclusion to compel entry of summary judgment in their favor under § 523(a)(6), it was incumbent on the O'Rorkes to satisfy the requirements set forth in *Pisnoy, supra.* Several of these elements are dispensed with quickly. The parties do not dispute that the state court action involved the same parties as the case at bar, or that the state court entered a valid, final judgment. Indeed, there was a judgment on the merits after actual litigation; the parties in the state court proceeding were the same as in the adversary proceeding. Nor is there any question as to whether appellate review was available to Porcaro in the state court action, as he amply availed himself of the appellate process in the state courts. Thus, the preclusive effect of the State Court Decision depends on the presence of the remaining elements for issue preclusion under Massachusetts law, namely: (1) the issues in the state court litigation were identical to the issues presented in the adversary proceeding; and (2) those issues were essential to the state court judgment. Porcaro never raised the question of whether the issues in the adversary proceeding were "essential" to the state court judgment, either in the proceedings below or on appeal. Accordingly, that issue is waived on appeal. *See Velázquez Rodríguez v. Municipality of San Juan*, 659 F.3d 168, 175 (1st Cir.2011) ("It should go without saying that we deem waived claims

not made or claims adverted to in a cursory fashion, unaccompanied by developed argument.") (citations omitted).

Our inquiry is, therefore, limited to whether the issues before the trial judge were identical to those in the adversary proceeding under § 523(a)(6), requiring the establishment of an injury, maliciousness, and willfulness. *See In re Jones, supra.* Porcaro argues that a Ch. 93A claim and a § 523(a)(6) claim lack the necessary identity of elements for application of the doctrine of issue preclusion, and, particularly, that the "willfulness" element of § 523(a)(6) is not satisfied here.

Porcaro does not meaningfully dispute whether the "maliciousness" element of § 523(a)(6) is met. In the proceedings below, he asserted, without elaboration, that the state court judge did not state in his written decision that "the debtor's conduct was malicious." In the reply brief which he filed in this appeal, Porcaro simply reiterates this assertion. Given the inadequacy of Porcaro's treatment of the "maliciousness" requirement, and that the heart of the parties' dispute, as demonstrated by their submissions below and on appeal, is really the "willfulness" issue, we need not dwell on the maliciousness element. *See Velázquez Rodríguez, supra.* In any event, the argument that the trial judge did not make a finding of maliciousness is meritless, as his conclusion that Porcaro's conduct was "as egregious a violation of consumer protection laws as there can be" is tantamount to a finding that Porcaro's actions were "wrongful" and "without just cause or excuse." *See In re Levasseur*, 737 F.3d at 818. Porcaro's claim that the injury element of § 523(a)(6) was not satisfied in the state court is equally unpersuasive. As we previously stated, "the term 'injury' ... is understood to mean a 'violation of another's legal right, for which the law provides a remedy.'" *Tacason*, 537 B.R. at 50

(quoting *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir.2013)). The trial judge's breach of contract finding easily satisfies this requirement. Thus, our sole focus is whether the willfulness issue in the state court was identical to the willfulness element of § 523(a)(6).

## B. Identity, Generally

For issue preclusion to apply, "[t]he identity of the issues need not be absolute; rather, it is enough that the issues are in substance identical." *Manganella v. Evanston Ins. Co.*, 700 F.3d 585, 591 (1st Cir.2012) (citing *Montana v. United States*, 440 U.S. 147, 155, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)). "Further, the issue need not have been the ultimate issue decided ...; issue preclusion can extend to necessary intermediate findings ..., even where those findings are not explicit. ..." *Id.* (citations omitted).

## C. Are the Elements of Ch. 93A and § 523(a)(6) the Same?

The issue before the trial judge regarding the multiplication of damages was whether Porcaro acted willfully or knowingly. *See Kattar*, 739 N.E.2d at 259 (equating "willfully" with "recklessly" and "knowingly" with "intentional acts"). The issue before the bankruptcy court on summary judgment was whether there existed a genuine issue of fact regarding whether Porcaro intended the consequences of his act, not simply the act itself—i.e., whether there existed a substantial certainty that harm would result from Porcaro's conduct. *See Slosberg, supra.*

Porcaro correctly points out that Ch. 93A violations and § 523(a)(6) claims are not synonymous. We are cognizant that "it would be possible for a state court to find a violation of [Ch.] 93A ... for behavior which lacks the characteristics of misconduct necessary to support a ... finding of nondischargeability." *Common-*

wealth v. Hale, 618 F.2d at 147. Moreover, we previously agreed with the "majority of courts that . . . have concluded that a state court judgment that could have been based on reckless disregard is not the equivalent of the substantial certainty required by § 523(a)(6)." In re Bradley, 466 B.R. at 588 (citing cases). Nonetheless, this does not mean that a Ch. 93A judgment may not be given preclusive effect in a § 523(a)(6) nondischargeability proceeding. See In re Stanley–Snow, 405 B.R. at 22 (considering preclusive effect of a Ch. 93A judgment in subsequent § 523(a)(2)(A) action).

### D. The Effect of the Record: Determining Whether an Issue was Actually Litigated

In determining whether an issue was actually litigated and decided, we are " 'free to go beyond the judgment . . . and examine the pleadings and evidence in the prior action.' " In re Stanley–Snow, 405 B.R. at 22 (quoting Nissan v. Weiss (In re Weiss), 235 B.R. 349 (Bankr.S.D.N.Y. 1999), aff'd, 255 B.R. 115 (S.D.N.Y.2000)). Here, we cannot ignore the extensive record. The First Circuit has given us guidance as to the use of the record in similar proceedings. In Stoehr v. Mohamed, 244 F.3d 206 (1st Cir.2001), it was confronted with the analogous question of whether a Ch. 93A judgment may be given preclusive effect in a subsequent § 523(a)(2)(A) nondischargeability proceeding. As in the instant case, the Stoehr court had an "ample record." Id. at 208. The Stoehr court concluded that application of issue preclusion was appropriate in light of the record, reasoning as follows:

> [The state court] findings make clear that the issue of fraud was actually litigated in the superior court, was a necessary component of the court's judgment, and was the same as the issue adjudicated in the section 523(a)(2) proceeding . . . .

[Stoehr] correctly points out that [Ch.] 93A violations and fraud are not synonymous, and that [Ch.] 93A liability may be premised on conduct other than fraud. The superior court's findings, however, make clear that fraud was in fact the basis for [Ch.] 93A liability in this case, and do not suggest any different theory of [Ch.] 93A liability.

Id. at 208–209.

In Stanley–Snow, supra, the Panel adopted Stoehr's reasoning to give a Ch. 93A judgment preclusive effect in a subsequent § 523(a)(2)(A) proceeding, stating:

> Neither misrepresentation nor fraud are a necessary component of a state court's judgment for [Ch.] 93A violations. Moreover, in a[Ch.] 93A action, it is unnecessary for a plaintiff to establish that the defendant knew his allegedly deceptive representations were false or to prove actual reliance upon the defendant's representations. . . .
>
> Notwithstanding, this does not mean that a[Ch.] 93A judgment may not be given preclusive effect in a § 523(a)(2)(A) nondischargeability proceeding. To the contrary, collateral estoppel is appropriate where, as here, the record so amply supports the state court's conclusions in the State Court Judgment based on the Debtor's fraudulent conduct. See Stoehr, 244 F.3d at 208. As the Stoehr court noted: "An issue may be actually decided for purposes of collateral estoppel, even if it is not explicitly decided, if it 'constituted, logically or practically, a necessary component of the decision reached in the prior litigation.' "

In re Stanley–Snow, 405 B.R. at 22 (citations omitted).

### E. The Contents of the Record in the Instant Appeal

This now brings us to the ultimate question: does the record in this case sup-

port the bankruptcy court's nondischarge-ability conclusion? As part of his charge, the trial judge had to decide whether Porcaro's actions were willful (reckless) or knowing (intentional), such that the multiplication of damages was warranted. The trial judge's unambiguous and factually supported findings set forth in the State Court Decision leave little question that Porcaro's actions were "intentionally done." He twice described Porcaro's actions as willful (in descriptions unrelated to the Ch. 93A claim), and to substantiate the trebling of damages under the Ch. 93A claim, he found that Porcaro's actions were willful and knowing, stating: "[T]he wil[l]ful and knowing violation of the contract by installing windows of an improper size is as egregious a violation of consumer protection laws as there can be." Furthermore, the trial judge found that Meredith, Porcaro's subcontractor, alerted Porcaro that the windows were too small prior to installation and that Porcaro then instructed Meredith to install the windows anyway. The trial judge found that such windows created "a danger of water and other damage" so that their replacement was required. He explained the evidence supported the arbitrator's earlier findings. In addition to the comprehensive State Court Decision, we have the benefit of portions of the transcript of Meredith's testimony (omitted from the record by Porcaro, but supplied by the O'Rorkes), wherein Meredith explained he warned Porcaro about the problem with the windows, and cautioned him that the old ones should be reinstalled pending the order of suitable replacements. Meredith's testimony further establishes that Porcaro took steps to cover up the improper installation and made threats should Meredith inform the O'Rorkes.

 "An issue may be 'actually' decided even if it is not *explicitly* decided, for it may have constituted, logically, or prac-tically, a necessary component of the decision reached in the prior litigation." *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30–31 (1st Cir.2014) (citation omitted). Thus, in *Tacason*, despite the absence of an explicit finding of intent to injure, the Panel held that certain state court rulings made upon the entry of the default judgment satisfied the elements of § 523(a)(6). 537 B.R. at 53–54. Here, although the state court did not expressly find that Porcaro intended to injure the O'Rorkes, the court's findings, combined with the testimony from the state court trial, easily support a conclusion that harm to the O'Rorkes was substantially likely to occur, and that Porcaro "still [went] ahead." *See In re Slosberg*, 225 B.R. at 19 (stating if the actor knows that the consequences are certain, or substantially ·certain, to result from his act, and "still goes ahead, he is treated by the law as if he had in fact desired to produce the result") (citation omitted) (internal quotations omitted). Indeed, the state court findings make it clear that Porcaro's knowledge was a significant basis for Ch. 93A liability, and do not suggest a different theory of liability.

Moreover, the fulsome nature of the record before us distinguishes the instant case from others where a paltry record prevented the court from applying the doctrine of issue preclusion. *See, e.g., In re Bradley*, 466 B.R. at 589 (refusing to give preclusive effect to a California state court judgment for infliction of emotional distress in a subsequent § 523(a)(6) proceeding, stating the basis for the state court judgment was "opaque," especially given the absence of the state court complaint, transcript, or detailed findings from the record); *In re Swasey*, 488 B.R. at 45 (declining to give preclusive effect to a Ch. 93A judgment in a subsequent § 523(a)(6) proceeding, reasoning that the debtor's intent to injure the plaintiffs remained "[e]lusive," in part, "[b]ecause of the absence of direct and circumstantial evi-

dence"); *Morin v. Longo (In re Longo),* 37 B.R. 900, 902 (Bankr.D.Mass.1984) (refusing to hold that the state court record of prior Ch. 93A proceedings established the elements of a § 523(a)(6) claim, where the "state court record [was] devoid of any allegations or findings which would warrant a conclusion that the state court made a finding that the injury was willful and malicious"). The abundance of the record in the instant appeal, as in *Stoehr, Stanley–Snow,* and *Tacason,* compels a conclusion that the "willfulness" element of § 523(a)(6) was actually litigated in the state court. Accordingly, the bankruptcy court correctly denied the Summary Judgment Motion and granted the Cross–Motion, based on the preclusive effect of the State Court Decision.

### CONCLUSION

Based on the foregoing, the Orders are **AFFIRMED.**